617 A.2d 375

**Karin R. MILLER**

v.

**Kurtz J. MILLER, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued April 7, 1992.

Filed Nov. 19, 1992.

24

Arthur T. McDermott, Carlisle, for appellant.

Henry O. Heiser, III, Gettysburg, for appellee.

Before OLSZEWSKI, BECK and HOFFMAN, JJ.

BECK, Judge:

This is the second appeal to this court in unduly protracted litigation over the distribution of marital property after a divorce. Appellant-husband Kurtz J. Miller, Jr. ("Husband") once again seeks to overturn the trial court's order of equitable distribution to appellee-wife Karin R. Miller ("Wife"). The first appeal was decided in *Miller v. Miller*, 395 Pa.Super. 255, 577 A.2d 205 (1990), *alloc. den.*, 525 Pa. 664, 583 A.2d 794 (1990) *("Miller I")*. In this appeal, Husband challenges the trial court's valuation and distribution of his military pension. We affirm.

The parties were married on November 10, 1967. Husband retired from the army as a Colonel in 1973. The parties and their two sons then moved to Adams County. In 1984, Wife filed a complaint in divorce, seeking property distribution, alimony, alimony pendente lite, counsel fees and expenses. On May 15, 1989 the court entered a final divorce decree which *inter alia* incorporated the property division. Wife was awarded a portion of Husband's military pension.[1] In calculating the amount of the pension available for equitable distri-

---

1. The trial court used the "immediate offset" method in its computation of the present value of the pension. The immediate offset method:
   divides the benefits at the time the equitable distribution order is entered by assigning a present value to them ... [O]nly those benefits attributable to the period commencing with the marriage and ending on the date of separation are marital property.... The present value must be multiplied by the "coverture" fraction to reach the present value of the entitlement which was acquired during the marriage.... Next, the court must determine how the sum available for equitable distribution should be apportioned between the spouses according to the Divorce Code ... The immediate offset method has the advantage of avoiding further entanglement between the parties.... [and] it effectuates a final and immediate settlement of the distribution of the retirement benefits....
   *Miller I*, 395 Pa.Super. at 261–62, 577 A.2d at 208–09, *quoting Braderman v. Braderman*, 339 Pa.Super. 185, 488 A.2d 613, 619–20 (1985).
   The coverture fraction is calculated by dividing the months of marriage by the months of military service, in this case, 72 months of marriage divided by 376 months of military service, or .1915. *Miller I, supra.* Therefore, the marital portion of husband's military pension equals 19.15% of its present value.

bution, the trial court included Husband's veterans' disability benefits.[2]

■ The *Miller I* court found error in the trial court's inclusion of the veterans' disability benefits in the amount of the pension available for equitable distribution.[3] On remand the trial court was directed to: 1) determine the present value of Husband's pension; 2) determine the amount of disability compensation currently being received by Husband; 3) redetermine the amount of Husband's pension properly available for equitable distribution; and 4) examine the factors set forth in the Divorce Code in light of the new distribution. *Miller I*, 395 Pa.Super. at 261–62, 577 A.2d at 208–09.[4]

2. The six issues raised in Husband's first appeal were: 1) did the court properly evaluate the factors set forth in 23 Pa.C.S.A. § 401(d) [now § 3502(a)] in awarding Wife the bulk of the marital estate; 2) may the court treat that portion of Husband's pension waived in order to receive veterans' disability benefits as marital property; 3) should a vested, matured, and currently being received pension be distributed on an "actuarially based current value"; 4) was Husband's military pension properly evaluated since service beyond thirty years does not increase the percentage of the pension; 5) if the court's decision to award "present value" of Husband's military pension was appropriate, should the present value be determined on the date of valuation [sic] [separation] or the date of distribution; and 6) should Husband be given a reasonable opportunity to present his case. *Miller I*, 395 Pa.Super. at 256–58, 577 A.2d at 206.

3. Under *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), military retirement pay that has been waived to receive veterans disability benefits cannot be treated as divisible marital property. *See also Martin v. Martin*, 385 Pa.Super. 554, 561 A.2d 1231 (1989) (following *Mansell*).

4. Title 23 Pa.S.C.A. § 3502(a) sets forth several factors to be considered by the trial court when it makes an order of equitable distribution:
(1) The length of the marriage.
(2) Any prior marriage of either party.
(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.
(4) The contribution by one party to the education, training or increased earning power of the other party.
(5) The opportunity of each party for future acquisitions of capital assets and income.
(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

After remand, the trial court conferenced with the parties. The trial court ordered Husband and Wife to submit new Proposed Plans for Marital Shares, including current valuations of the pension. Husband's Proposal included a copy of his current monthly pension pay statement, dated March 1991, which listed the following information:

| | |
|---|---|
| Net Entitlement: | $4699.00 |
| VA Disability Reduction: | 1179.00 |
| Adjusted Entitlement: | 3520.00 |

These amounts reflect Husband's 80% disabled status.[5]

Wife also submitted her Proposed Plan, which included an accountant's revised calculation of the pension's value, omitting the amount of disability compensation, and taking into account Husband's current life expectancy. The accountant's computation was based on the following assumptions: the monthly pension payment, excluding disability benefits, was $3520; Husband's life expectancy at the age of 70 was 11.00 years, resulting in 132 monthly payments, and; the pension would be adjusted for cost of living by 5%. The accountant then discounted this total amount by 7.75%, yielding a present value of $403,321.00. Applying the coverture fraction of .1915, the marital portion of the present value of Husband's pension is $77,235.98. *Appellant's Brief* at Exhibit A.

Husband agreed with the discount and cost of living allowance rates utilized by Wife's accountant. *Proposed Plan for*

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as a homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party, including Federal, State and local tax ramifications, at the time the division of property is to become effective.

(11) Whether the party will be serving as the custodian of any dependent minor children.

5. Husband argues that he is now 100% disabled, and he apparently has requested the government to re-evaluate his status. However, he produced no evidence that the government has increased his disability payment. As of the time the trial court issued its order of marital shares, Husband's own exhibit indicated that he is 80% disabled.

*Marital Shares* at 7. However, he claimed his monthly entitlement was only $2870 and that his life expectancy was 10 years. Based on these figures he argued that the present value of his pension was $289,836. Applying the coverture fraction of .1915, Husband argued the marital portion of the pension was $55,504. Husband's figures and therefore his calculations are not supported by the record.

The trial court held argument on the submitted Plans and issued an order and opinion adopting Wife's expert's valuation of the marital portion of the pension, which excluded the VA disability payment. The court granted 60% of the marital estate to Wife. Husband filed this timely appeal.

Husband raises two challenges in this appeal. He asserts that the trial court should have conducted an evidentiary hearing regarding the current status of the factors listed in Section 3502(a) of the Divorce Code (see fn. 4) and that the trial court erred in basing its award on "bare allegations of values contained only in Wife's proposed plan for marital shares." *Appellant's Brief* at 5. Finding no merit in Husband's arguments, we affirm the trial court.

█   We first note our limited scope of review from an order of equitable distribution. Awards of property distribution are within the sound discretion of the trial court, and will not be disturbed unless there has been a clear abuse of discretion. *Ruth v. Ruth,* 316 Pa.Super. 282, 462 A.2d 1351 (1983). An abuse of discretion is not found lightly, but upon a showing of clear and convincing evidence. *Miller I, supra.* As a result, under the abuse of discretion standard, the appellate court does not usurp the trial court's duty as fact finder. An abuse of discretion will be found by this court only if the trial court failed to follow proper legal procedures or misapplied the law. *Braderman v. Braderman,* 339 Pa.Super. 185, 488 A.2d 613, 615 (1985).

█   Husband complains that the trial court did not properly review the Divorce Code factors (23 Pa.C.S.A. § 3502(a) in light of *Miller I's* instructions on remand. We disagree. Our review of the record indicates the opposite. Although the

court did not hold a new hearing on the section 3502 factors, it reevaluated them before making its award. In *Miller I*, this court found no error in the trial court's evaluation of the Divorce Code factors, and simply directed the trial court to reexamine the factors in making its order of a new distribution which excludes the disability payment from the marital estate. *Miller I*, 395 Pa.Super. at 260–61, 577 A.2d at 208. Pursuant to this instruction, the trial court recognized that Husband had decreased the marital estate by converting part of his pension into non-marital disability payments, and found that "Superior Court's decision obviously impacts heavily on [Divorce Code] factors (6), (8) and (10). Colonel Miller will continue to enjoy substantial income with more favorable tax benefits reporting [sic] from disability treatment." *Tr. Ct. Opinion* at 2. The trial court therefore increased Wife's distribution to 60% of the marital estate, in accordance with its reconsideration of the relevant Divorce Code factors.

Husband also asserts that a hearing was necessary to discover other changed factors, such as his age and his deteriorating health. However, these clearly are matters of record. Husband's current age was considered in the expert valuation of the pension adopted by the court, as was his current disability status as set by the government at 80%. Husband provided this information to the court. We find no abuse of discretion in the trial court's refusal to hold a hearing or on its findings which are supported by the record.

In addition, Husband argues that it was necessary for the trial court to hold a hearing because the "record does not reflect the amount of [his] military pension waived for veteran's disability." *Appellant's Brief* at 7. We disagree and find appellant's statement to be inaccurate. Husband's own exhibit appended to his Proposed Plan for Marital Shares indicates the amount of disability pay he receives monthly.

Husband argues that the trial court improperly adopted the report of Wife's accounting expert which provided a current valuation of the pension based on Husband's age and his March 1991 pension payment statement. Husband argues that he was not given an opportunity to challenge the report,

30

and that it was therefore "untried hearsay." *Appellant's Brief* at 9.

Husband had an opportunity to challenge the expert's report and also to present his own expert valuation of his pension, but he chose not to do so.[6] He merely offered an unsubstantiated alternate calculation of the present value of the marital portion of the pension.

Husband argues that the court erred in two additional respects. He alleges that the trial court accepted the expert's pension valuation as of the date of separation instead of the date of distribution. In addition, he asserts that the court improperly accepted the expert's calculation based on Husband's age of 70 instead of 71. We find no error.

In June 1991, when the current valuations were prepared, Husband was still 70 years old, and his statistical life expectancy could be gleaned from the record.[7]

**6.** Husband has made this argument before. In his first appeal he claimed that he did not have an opportunity to secure expert witnesses. At that time we stated that:

[t]his case has been going on for five (5) [now seven] years, and, in light of the master's report filed in December of 1988, appellant was aware of the issues. Also, he failed to ask for a continuance to secure these witnesses. We do not accept that appellant was that unprepared. The court has been tolerant and has afforded him chances to present his case. Accordingly, this issue is meritless. *Miller I*, 395 Pa.Super. at 260–61, 577 A.2d at 208.

If Husband had more compelling evidence to present to the trial court on the pension valuation issue, he could have done so when he submitted his Proposed Plan for Marital Shares. *See Liciardello v. Liciardello*, 391 Pa.Super. 219, 570 A.2d 1062 (1990) (where husband did not comply with court's request for current property valuation, his objection to court's order of distribution was waived); *Bold v. Bold*, 358 Pa.Super. 7, 516 A.2d 741 (1986) (valuation of husband's pension based on wife's expert report was proper where husband did not demonstrate that such valuation was erroneous).

**7.** Husband based his life expectancy of approximately 10 years on the Life Tables included in the Pennsylvania Standard Civil Jury Instructions (1967) for a 71 year old white male. Husband was born on September 30, 1920, and was therefore 70 years and 9 months old when the valuations were compiled. Wife's accountant used the Male Single Life Estate Table (West 1987) to find a life expectancy of approximately 11 years for a 70 year old male. We find no abuse of discretion in the trial court's adoption of the latter figure.

■ Husband further argues that the date of distribution should have been used to value the pension rather than the date of separation. Husband's argument is meritless since the pension was valued as close to the date of distribution as was possible in this case, and not at the date of separation. We underscore the principle that when using the immediate offset method of pension distribution, the valuation should be made "as close as possible to the property distribution date." *Miller I,* 395 Pa.Super. at 263, 577 A.2d at 209; *Braderman, supra.* This is especially important when there has been a considerable passage of time since the separation date which has resulted in substantial fluctuations in the value of the asset to be divided. *See, Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988). In this case, the trial court acknowledged the fact that several years had passed since the parties separated in 1984, and that the present value of Husband's pension had decreased along with his decreased life expectancy. *Tr.Ct.Opinion* at 2.

Therefore, contrary to Husband's assertion, the trial court did *not* value the pension as of the date of separation. Rather, the date of valuation of the pension was as close to the distribution date as possible under the circumstances of this case. The pension valuation adopted by the trial court was made in June 1991, using Husband's current age and pension/disability information. His life expectancy in June 1991 translated into 132 monthly pension payments over approximately 11 years.[8] The trial court issued its order in September 1991, with the expectation that distribution would occur shortly thereafter. Of course, this appeal followed, and still more time has passed. The passage of time under these circumstances does not mandate that a new valuation be made.[9] While we recognized in *Miller I* that valuation should

8. If the present value of the pension were calculated as of the date of separation, when Husband was 64 years old, his life expectancy would have been approximately 13.52 years, yielding about 162 monthly pension payments.

9. Husband essentially argues that each time he files a Notice of Appeal he should be rewarded with a re-litigation of every issue in this case. Although it is important that a valuation be as current as possible, and

be made as close to the date of distribution as possible, we reasoned that "[a]bsent a specific benchmark for valuation, the trial court is free to select the date which best serves to provide for economic justice between the parties. The date chosen by the trial court is reviewed under an abuse of discretion standard." *Miller I,* 395 Pa.Super. at 263, 577 A.2d at 209; *Aletto v. Aletto,* 371 Pa.Super. 230, 237, 537 A.2d 1383, 1387 (1988).

The trial court in the instant case followed the directives of the Superior Court on remand. We note that the *Miller I* court already had approved the coverture fraction and immediate offset method of calculation used by the trial court in its previous distribution order, with the caveat that the disability portion of Husband's monthly payment must be excluded. *Miller I, supra.* We find no abuse of discretion in the trial court's adoption of Wife's valuation of the marital portion of the pension at $77,235.98. The information utilized by the court to calculate this amount was current as of the proposed date of distribution.

Husband has had sufficient opportunity to present his own evidence and to challenge Wife's arguments. The trial court properly carried out the directives set forth in *Miller I* and we find no error in the trial court's determination and order.

Order affirmed.

that relevant changed circumstances be considered, the process must end somewhere. "A litigant cannot contest the relative value of assets on the ground that they substantially changed while the case was being further litigated." *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534, 539 (1988) (McDermott, J., concurring).