**Francesca MARRA**

v.

**Lawrence MARRA, Sr., now Estate of Lawrence Marra, Sr., Deceased.**

**Appeal of: Estate of Lawrence Marra.**

Superior Court of Pennsylvania.

Argued March 26, 2003.
Filed Aug. 28, 2003.

---

Ronald V. Santora, Kingston, for appellant.

Frank S. Poswistilo, Easton, for appellee.

BEFORE: JOYCE, ORIE MELVIN and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 This is an appeal from the order of the trial court setting forth precisely what property of the parties was subject to equitable distribution and the manner in which that property was to be divided between them. In addition, the court awarded attorney's fees to appellee/wife. We affirm.

¶ 2 Francesca (Wife) and Lawrence (Husband) Marra had been married for over forty years when they were divorced in 1989. This case, the litigation regarding division of their marital assets (the 961 action), has been ongoing since that time and has continued even after Husband's death in 1992.[1] At the core of the conflict between the parties are numerous pieces of real property acquired by Husband in his real estate business. The dispute is further complicated by the questionable manner in which Husband operated the business throughout his life. A previous appellate decision of this Court in a separate, but related, case explained:

> During his life [Husband] maintained a real estate business through which he acquired hundreds of properties throughout Pennsylvania. [The couple's] son was involved with [Husband] in the real estate business. In the conduct of this business, [Husband] frequently titled properties he acquired in the names of members of the Marra family. [Husband] also used a practice of signing blank deeds to facilitate the purchase and sale of properties. Pursuant to this practice, members of the Marra family would sign deeds before the description of the property on the deed was complete.

*Marra v. Marra*, 688 EDA 1999, 752 A.2d 428 (filed January 20, 2000).

¶ 3 The case from which this excerpt is taken was a civil action (the 4001 action) filed by Husband seeking the return, by way of a resulting trust, of certain parcels of property fraudulently acquired by the parties' son.[2] Husband ultimately was

---

1. Throughout this Memorandum we use the term "Husband" to refer to both Husband and Husband's estate.

2. Just weeks before Wife filed her complaint in divorce, son, Lawrence Marra, Jr. (Junior)

transferred ownership of eighteen properties titled in his name to his company, L.M.J. At about the same time, other properties initially owned by Husband and Wife or Husband's sister were transferred to Junior. In Husband's subsequent civil action, filed against

successful in having the properties returned to him. This Court affirmed the trial court's order imposing a trust and directing the return of the properties to Husband. *Id.*

¶ 4 As the 4001 action proceeded through the courts, so too did the parties' equitable distribution case, the 961 action. Less than two weeks after the appellate resolution of the 4001 action, this Court filed a Memorandum Opinion in the 961 action and affirmed the trial court's equitable distribution order. That case involved the distribution of numerous other properties, not included in the 4001 action, owned by the parties. Pursuant to the trial court's order, Husband was required to choose real property from "pick lists" that had been drawn up by Wife.[3] Both parties appealed the trial court's order and this Court rejected all allegations of error and affirmed. *Marra v. Marra,* 892 EDA 1999, 754 A.2d 29 (February 2, 2000).

¶ 5 After the filing of both appellate decisions (the 4001 action and the 961 action), Wife petitioned the trial court to add the 4001 properties to the pick lists and sought distribution of her share in the newly supplemented marital pot. She also requested attorney's fees in connection with the litigation. Husband opposed the inclusion of the 4001 properties, arguing that Wife had supported son's claim of ownership of the properties in the 4001 action and so was estopped from claiming that the properties were marital property subject to equitable distribution. Husband likewise challenged the request for fees.

¶ 6 The trial court entered three orders dated December 20, 2001 that: 1) deemed the 4001 properties marital property subject to equitable distribution and directed that they be added to the pick lists; 2) commanded Husband to choose from the pick lists within a specified time or if he failed to do so, directed the County Sheriff to make selections on Husband's behalf; and 3) awarded Wife $177,459.32 in counsel fees and costs.

¶ 7 Husband sought reconsideration of the court's order and the court initially entered an order granting reconsideration and scheduling argument. On August 16, 2002, the court entered an order denying and dismissing reconsideration and, on August 21, 2002, the court entered an amended order of substantially the same direction. Husband thereafter filed this timely appeal.[4]

■ ¶ 8 In matters of equitable distribution, the trial court has broad equitable powers to effectuate economic justice between the parties and we will not reverse

---

Junior, L.M.J. and Wife, Husband claimed that Junior fraudulently conveyed the various parcels of property.

3. The pick lists divided the properties in a relatively equal manner. The properties were separated by county and within each county there was a choice of either list "A" or list "B". In addition to approving the method of distribution by way of the lists and granting Husband first choice of the lists, the trial court also ordered disbursement of escrow accounts in varying amounts between the parties.

4. Although one of the court's three orders required Wife to list the matter before the court after the picks were made so that an order could be issued adopting distribution, we nonetheless find the orders of the court appealable under these facts. The last time this Court engaged in appellate review in this case, it considered a trial court order that set out the method of distribution of the real property and divided other assets in an amount certain. *Marra v. Marra,* 892 EDA 1999, 754 A.2d 29 (February 2, 2000). Here the trial court once more set out the method of distribution of real property and awarded attorney's fees in an amount certain. Once reconsideration was denied, the matter was finally decided and Husband was without further remedy in the trial court.

an award absent an abuse of that discretion. *Miller v. Miller*, 421 Pa.Super. 23, 617 A.2d 375, 377 (1992).

■ ¶ 9 Husband first claims that the trial court abused its discretion when it concluded that the 4001 properties constituted marital assets subject to equitable distribution. In support of his claim, Husband relies on Wife's "acquiescence" and "support" of Junior's claim to ownership in the 4001 action. According to Husband, Wife was precluded from claiming the properties were marital assets based on judicial estoppel and/or estoppel "by record."

■ ¶ 10 Judicial estoppel is a doctrine that prohibits a party from taking a position in a subsequent judicial proceeding that is inconsistent with the party's position in a prior judicial proceeding. *Widener University v. Estate of Boettner*, 726 A.2d 1059, 1062 (Pa.Super.1999). Estoppel "by record" prevents a party from assuming a position that is inconsistent with his assertion in a previous action, if his contention is successfully maintained. *Giesey v. Cogan*, 118 Pa.Super. 464, 179 A. 865, 866 (1935). The "prior position" and "record" upon which Husband relies is the Answer filed by the Defendants in the 4001 action, which asserted that the properties at issue were gifts from Husband and Wife to Junior.[5]

¶ 11 In response to Husband's claims, Wife asserts that Junior's ownership was not "successfully maintained" in the 4001 action. She also argues that the status of the 4001 properties always was uncertain and, further, that both parties and the court "understood" that in the event the properties were found not to be owned by Junior, they would be subject to an equitable distribution claim by Wife. There are a variety of record citations in support of Wife's position, including statements by counsel and the court.

¶ 12 In his reply brief, Husband responds that "to acknowledge that the 4001 properties 'may be subject to' an equitable distribution claim by [Wife] is a far cry from [Husband's] agreement that such properties would be automatically marital." Appellant's Reply Brief at 4. While that may be true, the acknowledgment nonetheless establishes Wife's intention with respect to the 4001 properties and Husband's awareness of that intention.

¶ 13 Like the trial court, we find that neither judicial estoppel nor estoppel by record applies in this instance. Wife's "support" of Junior's ownership claims is by no means clear on the record. Even if it was, Wife surely made known her intention to seek her share of the 4001 properties in the event Husband prevailed in that case. Likewise, the court noted that if the 4001 properties ultimately were ordered returned to Husband, they would be subject to Wife's equitable distribution claim. Husband's estoppel claims have no merit.

■ ¶ 14 We also reject Husband's claim that Wife is barred from asserting a claim to the 4001 properties under the doctrine of unclean hands. In addition to the fact that the claim was never raised below, the record is replete with instances of both parties' questionable conduct throughout this hostile and protracted legal battle.[6]

---

5. Although Junior and his company, as the record deed holders, were the primary defendants in the 4001 action, Wife too was listed as a defendant. Husband claimed she was a participant in Junior's ownership schemes.

6. Like his claim of unclean hands, Husband's claim of laches was not raised in the trial court and so we will not address it here.

■ ¶ 15 Husband next argues that the award of attorney's fees was improper. Such an award is within the discretion of the trial court and we may reverse only upon a finding of abuse of that discretion. *Williamson v. Williamson*, 402 Pa.Super. 276, 586 A.2d 967, 973 (1991). The purpose underlying the award of fees is to place the parties "on par" in defending their respective rights. *Perlberger v. Perlberger*, 426 Pa.Super. 245, 626 A.2d 1186, 1206 (1993).

¶ 16 In addition to her equitable distribution case, Wife has required legal representation in a variety of proceedings over the last decade or so, many of which occurred because Husband's conduct during and after the marriage placed Wife's entitlement to an equitable distribution of the marital assets at risk. These proceedings included Husband's unsuccessful appellate challenge to the divorce decree, Wife's partially successful action to recover certain properties titled in the name of a woman with whom Husband had a ten-year extramarital relationship, and Wife's claims in Husband's (ultimately dismissed) bankruptcy case. In light of these facts, we find no error by the trial court in deciding to award fees to Wife.

■ ¶ 17 Husband further claims that even if counsel fees were appropriate for legal services provided prior to 1992, any claim to fees ceased upon Husband's death. Husband relies on *Pastuszek v. Pastuszek*, 346 Pa.Super. 416, 499 A.2d 1069 (1985), which held that a wife's entitlement to fees from her husband ceased after the wife's death, and *Taylor v. Taylor*, 349 Pa.Super. 423, 503 A.2d 439 (1986), which relied on *Pastuszek* when it stated that a spouse's entitlement to counsel fees ceases upon the death of the other spouse.

¶ 18 *Pastuszek* does not prevent the award of fees here because it held only that the entitlement to fees expired at the death of the spouse requesting fees. *Taylor* is not on point because neither spouse in that case had died and the court was merely addressing the possibility of what could occur in the event of death. In any event, we decline to broaden application of *Pastuszek* and *Taylor* to the facts of this case for another, more significant reason. Neither *Pastuszek* nor *Taylor* involved the type of questionable conduct, both business-related and personal, exhibited by Husband during and after the marriage in this case.

■ ¶ 19 Wife's attempts to recover that which was due her in equitable distribution were thwarted by Husband at nearly every turn. Wife was compelled to respond to Husband's challenges to the marriage and the divorce as well as his claim of bankruptcy. In addition, Wife commenced an action to recover marital assets that Husband illegally transferred to his long-time paramour. An award of counsel fees should be "sufficient so as to advance just results." *Williamson*, 586 A.2d at 975. Husband's conduct during and after his marriage prompted the award of fees in this case and we find no abuse of discretion in this ruling. We decline to reverse the finding of the trial court that the "actions of [Husband] during his lifetime justify an entry of counsel fees long after his death." Trial Court Opinion, 10/31/02, at 2.

■ ¶ 20 Husband's final claim is that the trial judge, The Honorable James C. Hogan, erred in commanding him to choose from either list "A" or "B" of the pick lists. Husband claims that the trial judge who originally set out the order of distribution, The Honorable Richard D. Grifo, permitted Husband to pick properties from both lists. According to Husband, Judge Hogan's interpretation of

Judge Grifo's order is flawed and represents an improper modification.

¶ 21 Judge Hogan addressed Husband's claim at the reconsideration hearing and reasoned:

> On the issue of pick lists, the third subject which is dealt with in [Husband's] memorandum, I don't see any problem with [this] Court's ruling. In support of the request that the pick lists should be interpreted to include internal picks as opposed to group picks, it's offered that Judge Grifo made a comment about it in writing saying particularly—I'll get it out here. Actually, it's in the motion itself and it quotes Judge Grifo as follows: In No. 44 of the documents, we quote, ["]we specifically note that the estate may choose from list A or list B in each set of categories. In other words the estate is not limited to choosing from list A or list B.["]
>
> I read that to mean that the estate is empowered to pick an A from Carbon County and a B from Lehigh County and is not restricted to picking all A's from all the counties. It doesn't take either all A's or all B's and the contrary interpretation would nullify the reason to set aside the groups at all because there wouldn't need to be A's or B's in the event there was going to be a permissive selection within each of the categories and it just makes no sense for that interpretation to be applied in my mind and I don't see any room to move around and I understand [Husband's] argument about it and I'm going to deny the petition for reconsideration on that subject matter.

Reconsideration Hearing, 1/17/02, at 3–4.

¶ 22 Judge Hogan's interpretation of Judge Grifo's order is eminently reasonable. The clear purpose underlying the use of the pick lists, which Husband unsuccessfully challenged before Judge Grifo, was to split evenly the many parcels of property in the marital estate. Wife created the lists and Husband was granted first choice; this method insured that a fair list would be drawn. Judge Hogan aptly recognized that if Judge Grifo intended to permit Husband to make internal picks within a given county, as opposed to choosing all of one list from that county, there would have been no need for lists in the first place. We are troubled by Husband's claim that he truly believes he is entitled to choose one half of the over 150 properties on both lists, regardless of their values, and Wife is to receive the other half. Such a method of distribution would be far from "equitable" and simply was not the intention of Judge Grifo.

¶ 23 Contrary to Husband's claims, there has been no improper "modification" of Judge Grifo's ruling. Rather, Judge Hogan made a reasonable, and indeed the only fair, interpretation of that order. We find no error.

¶ 24 Order affirmed.