J-S05028-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LYNN M. HOCKER, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DIANA L. HOCKER, | : | |
| | : | |
| Appellee | : | No. 1086 WDA 2014 |

Appeal from the Order Entered June 3, 2014,
In the Court of Common Pleas of Bedford County,
Civil Division, at No. 931 for 2010.

BEFORE:  DONOHUE, SHOGAN, and STABILE, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 04, 2015**

Lynn M. Hocker ("Husband") appeals from the June 3, 2014 order of the Bedford County Court of Common Pleas in this divorce action against Diana L. Hocker ("Wife").  We affirm.

The trial court summarized the basic facts regarding the parties and their respective incomes, as follows:

> The parties were married on August 9, 1986 in the state of Kansas.  The parties have two children, a daughter, age 25, and a son, age 23.  It was a first marriage for both parties. [Husband], Lynn M. Hocker, is 58 years of age, having been born on January 15, 1956.  [Husband] is a business consultant who operates his own business.  [Husband] provides training in communication and problem solving.  The company staff consists of himself and an office manager.  The business is organized as a sub-chapter S corporation.  In 2013 the corporation reported a loss of $42,980.00.  [Husband's] personal returns showed a total negative income of approximately $798.00.  [Husband] also operates a number of other business entities, most of which

appear to be duly filed fictitious names for the same business. These entities are known as Solutions in Human Resources, Whispering Creek Foundation, Whispering Creek Project Fund, Whispering Creek LLC, Whispering Creek, and Whispering Creek Trading Company. Based on [Husband's] testimony it appears these different names were used to take advantage of business and tax opportunities. In 2010 [Husband's] business interests showed a loss for income tax purposes of $108,769.00. [Husband] showed income of $4,516.00 on his personal return.

[Husband] has suffered from health problems over the last few years. In 2002 [Husband] had a total hip replacement resulting from degenerative arthritis. Two months after the operation he was in an automobile accident which broke the prosthesis. In 2010 the replacement hip shattered requiring a second replacement. Currently he suffers from significant strength loss and is able to stand for only a few minutes at a time. Further, he suffers from arthritis in the other hip and in both shoulders. [Husband] also has nerve damage in his left side, and suffers from hypertension. [Husband] currently receives payments from a private disability insurance policy. [Husband] testified that the policy will pay him as long as he maintains his profession. [Husband] stated that he receives $5,516.00 per month or $66,192.00 per year. [Husband] stated this insurance is free from income taxes and he receives these payments until age 65 as long as he maintains the business.

[Wife], Diana L. Hocker, is 51 years of age, having been born on September 23, 1962. [Wife] was 24 at the time the parties were married. [Wife] has an Associate's Degree in general studies. At the time of the marriage [Wife] was employed as an accountant for a retail sales business. As noted, the parties married in Kansas then lived in Wisconsin for four years. The parties moved to Bedford County in 1991. [Wife], by agreement of the parties, had been employed full time in the home since they had lived in Wisconsin. Although she conceded she did some child care in the home in Wisconsin. When the parties moved to Bedford her duties were the care of the home and the children. [Husband] was employed at several area companies before starting his present business in 1998. [Wife] eventually obtained part time employment as an office worker. [Wife] sought full time employment when [Husband] filed the

divorce. Currently [Wife] is employed at an insurance company in Blair County earning $24,000.00 a year with health benefits. Initially this position paid $30,000.00 a year, but her job was changed when she was unable to do the insurance portion of the job which resulted in a $6,000.00 pay reduction. [Wife] also receives an annual bonus of $1,000.00 to $1,200.00 a year. [Wife] has maintained this employment for four years. [Wife] stated she had never been involved in the finances of the consulting business and did not do the banking. [Wife] also receives $800.00 per month in spousal support and has received this for approximately one and one-half to two years. [Wife] reports no health concerns. The parties' final separation was on July 14, 2010.

Trial Court Opinion, 6/3/14, at 1–4.

Husband filed a complaint for divorce on July 16, 2010. Wife filed an answer on October 6, 2011, which included new matter claims for support, alimony *pendent lite*, and alimony. The trial court held evidentiary hearings over a two-year period on June 11, 2012, January 25, 2013, and March 3, 2014. The trial court granted the divorce on June 3, 2014, entered an order distributing the marital estate, granted Wife alimony for six and one-half years until Husband's sixty-fifth birthday, and awarded Wife counsel fees in the amount of $6,000.00. Husband filed a notice of appeal on July 2, 2014. Both Husband and the trial court complied with Pa.R.A.P. 1925.

The order of equitable distribution provides, in pertinent part, as follows:

2. [Husband] shall receive as his sole and separate property the following:

-3-

a. The life estate in real estate at 1117 Oppenheimer Road.

b. 2007 Ford F-250 pickup truck. [Husband] shall hold [Wife] harmless from any debt on said vehicle.

c. Chevrolet 1500 pickup, 2004 Honda motorcycle, 2007 Polaris ATV vehicle, 2007 Kawasaki motorcycle, 2004 Suzuki Eiger ATV, 2007 Honda Sportrax, 2001 Suzuki GS-500 Motorcycle, John Deere 955 tractor, and the 18 foot trailer.

d. Putnam Investment in [Husband's] name, Roth IRA in [Husband's] name, Investco account in [Husband's] name, and the Southwest Insurance Policy.

e. Solutions in Human Resources, Inc. its associated businesses and entities. [Husband] shall receive all checking accounts associated with said business and shall hold [Wife] harmless from any debt on said businesses.

f. All personal property and equipment currently in his possession unless otherwise awarded to [Wife].

3. [Wife] shall receive as her sole and separate property the following:

a. The real estate and improvements located at 434 South Bedford Street, Bedford, Pennsylvania. All furnishings and property contained therein. [Wife] shall hold [Husband] harmless from the mortgage on said residence, including but not limited to a set of Noritake china, set of silverware, glassware, all Longaberger baskets in the household, artwork by Terry Redlen, and Jesse Borner, children's toys and schoolwork.

b. 2008 Nissan Rogue. [Wife] shall hold [Husband] harmless from any debt on said vehicle.

c. 614 shares of Sara Lee stock, [Wife's] Putnam Investments, American Fund Investments in [Wife's] name, Investco IRA in [Wife's] name, and SAC, Inc. 401K.

4. [Husband] shall pay [Wife] reimbursement alimony at the rate of $800.00 per month for a period of six (6) years, seven (7) months from this date, but to end on [Husband's] 65th birthday.

5. [Husband] shall within 90 days of this date, pay [Wife] the sum of $6,000.00 toward her counsel fees.

6. The parties shall sign all documents necessary to effectuate this order.

Order, 6/3/14, at 1–3.

Husband raises the following issues on appeal:

1. Whether the Trial Court erred and abused its discretion by failing to include the majority of the parties' marital debts in its Equitable Distribution Analysis that Husband was either paying or responsible for paying, which included several loans, credit card accounts, lines of credit and student loans for their children.

2. Whether the Trial Court erred and abused its discretion by failing to recognize Husband's disability income as revenue for his business to maintain and pay for business expenses thereby incorrectly stating the disparity between the parties' income as significant.

3. Whether the Trial Court erred and abused its discretion by failing to include all of Husband's business expenses in the Equitable Distribution Analysis when calculating his income as evidenced by the business tax returns.

4. Whether the Trial Court erred and abused its discretion in calculating Husband's life estate by failing to take into consideration the maintenance costs and expenses paid to maintain the real estate which would significantly reduce its value.

5. Whether the Trial Court erred and abused its discretion by awarding Wife reimbursement alimony based upon the incorrect value of Husband's life estate.

6. Whether the Trial Court erred and abused its discretion by awarding Wife counsel fees when wife had reasonable income and resources to pay her attorney fees and receive the substantial share of marital assets from the estate.

Husband's Brief at 2–3.

A trial court has broad discretion when fashioning an award of equitable distribution. *Dalrymple v. Kilishek*, 920 A.2d 1275, 1280 (Pa. Super. 2007). Our standard of review is whether the trial court abused its discretion. *Smith v. Smith*, 904 A.2d 15, 19 (Pa. Super. 2006) (citation omitted). "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." *Yuhas v. Yuhas*, 79 A.3d 700, 704 (Pa. Super. 2013) (*en banc*), *appeal denied*, 93 A.3d 464 (Pa. 2014). In determining the propriety of an equitable distribution award, we must consider the distribution scheme as a whole. *Childress v. Bogosian*, 12 A.3d 448, 455 (Pa. Super. 2011). "[W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Schenk v. Schenk*, 880 A.2d 633, 639 (Pa. Super. 2005) (citation omitted). Moreover, it is within the province of the trial court to weigh the evidence and decide credibility. *Sternlicht v. Sternlicht*, 822 A.2d 732, 742 (Pa. Super. 2003).

Husband first asserts that the trial court failed to credit Husband for the marital debt he was paying or responsible for paying, resulting in an equitable distribution order that did not effectuate economic justice between the parties. Husband devised a chart in his brief that purports to list all of the marital debts or liabilities for which Husband is responsible, which allegedly total $286,721.48, noting their inclusion in the Reproduced Record as exhibit numbers. Husband states that he "testified that the above-referenced marital liabilities were incurred during the marriage," but the trial court failed to include them in its analysis. Husband's Brief at 12.

While Husband maintains that he testified regarding these alleged debts, he has failed to refer us to any such testimony in the record. Our appellate procedural rules provide that "[i]f reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument **must** set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears." Pa.R.A.P. 2119 (c) (emphasis added). Husband makes bald, unsupported claims without specific reference to the testimony in the record. Because Husband fails to direct our attention to the specific testimony of record that supports his claim, we could find the issue waived. Pa.R.A.P. 2119(b); **Stimmler v. Chestnut Hill Hosp.**, 981 A.2d 145, 153 n.9 (Pa. 2009) (stating that argument portion of brief must

contain "sufficient citation to the record . . . ."). It is not this Court's responsibility to comb through the record seeking the factual underpinnings of [an appellant's] claim. *Irwin Union National Bank and Trust Company v. Famous and Famous and ATL Ventures*, 4 A.3d 1099, 1103 (Pa. Super. 2010) (citing *Commonwealth v. Mulholland*, 702 A.2d 1027, 1034 n.5 (Pa. 1997)).

We conclude, however, that we can address the claim. We have examined Husband's argument closely. Three of the "debts" Husband identified are student loans of the parties' daughter. These three loans, items twelve through fourteen on Husband's chart, total $109,227.00. Item six is a line of credit for Husband's businesses in the amount of $20,398.80. The trial court awarded the businesses to Husband and provided that Husband "shall hold [Wife] harmless from any debt on said businesses." Order, 6/3/14, at 2. Items ten and eleven, $31,681.00 and $12,420.00 respectively, actually were **grants** related to Husband's businesses and the Oppenheimer Road property, which were awarded to Husband. Husband explained:

> In 2009 I have written and submitted a grant to the Department of Environmental Resources. And the intention of this grant to use our Oppenheimer Road retreat property as a renewal energy dispenser. So the grant was to encompass putting in place a geothermal system, a wind turbine, solar panels, a bio-diesel back-up generator, as well as LED lights through-out the facility. And we were fortunate enough to receive that grant. Now, that was in 2008 when I wrote it and it was awarded in 2009. And so

this series of documents shows not only the award of that grant but what were the deliverables in exchange for getting these types of monies, what was required of us in order to comply to the grant specifications.

* * *

Associated with the receiving of that grant there were two supplemental funding sources. One was Pennsylvania Sunshine Grant where we received some monies back in exchange for putting this particular, the Sunshine was for the solar panels. The second section in this was for, under the IRS guidelines, Section 1603, where we received about $31,000.00, $32,000.00 reimbursement, as well. And that is for the solar panels, the geothermal system and the lighting. Each one of these has a stipulation that if for some reason that I could not adhere to the guidelines during a five year period, they will requires those funds that they submitted reimbursed back to them.

* * *

Well, they are liabilities in that we've already received the money and if the IRS in that example deems us not following to the terms of the agreement would require those monies back. There have been instances where they didn't get the report information that they wanted and I've received not so kind letters from the IRS saying if we don't get the required data we will require repayment of these funds.

N.T., 6/11/12, at 67–68. Again, these grants were awarded for Husband's businesses, and there is no indication that the amounts advanced will have to be repaid. Finally, item three on Husband's chart is a $47,703.99 mortgage on the marital home awarded to Wife. The trial court ordered that Wife "shall hold [Husband] harmless from the mortgage on said residence." Order, 6/3/14, at 2. Subtracting these amounts, results in Husband's liability of $65,623.16, compared to Wife's mortgage of $47,703.99. We

agree with Wife that Husband is "trying to seek credit for expenses the judge did not order him to pay, *i.e.* his daughter's college tuition; the mortgage on the marital residence (which Appellee/Wife is paying); the various debt he has incurred on his business where he has taken significant tax losses over the years." Wife's Brief at 6. Thus, we reject Husband's claim as being unsupported by the record.

Husband's second and third issues are waived. It is well settled that the argument portion of an appellate brief must be developed with citations to relevant authority. Pa.R.A.P. 2119(a). "Where the appellant has failed to cite any authority in support of a contention, the claim is waived." ***Connor v. Crozer Keystone Health System***, 832 A.2d 1112, 1118 (Pa. Super. 2003) (citing ***Bunt v. Pension Mortgage Associates, Inc.***, 666 A.2d 1091, 1095 (Pa. Super. 1995)).

Here, Husband's argument pertaining to these issues contains no citation to relevant legal authority. Husband's Brief at 13–16. Instead, Husband makes bald allegations that the trial court incorrectly stated the disparity of the parties' incomes and failed to include Husband's business expenses in calculating his income as evidenced by the business tax returns. Because Husband's argument on these issues consists of broad statements and allegations but no analysis with relevant law, the arguments are not properly developed for our review as they fail to apply the law to the facts of

the case. This failure precludes appellate review. Thus, we conclude that these issues are waived.[1]

Next, Husband contends the trial court erred in calculating Husband's life estate of the Oppenheimer Road property by failing to consider the cost of maintaining it. The trial court described this property as follows:

> 2. **Life estate on real estate located at 1117 Oppenheimer Road, Bedford, Pennsylvania**. The real estate was acquired by the parties in 1998. It consists of 30 acres, a six room cabin and a garage. The property was improved over the years and it was used as a business retreat. It has been leased for a number of years to [Husband's] corporation which pays him rental for the use of the property. [Husband] received a grant from the government to do energy improvements. [Husband] had to complete a number of improvements and meet a number of conditions over a five-year period. However, [Husband] concedes the grant was $200,000.00 and was paid out over several years. When purchased in 1998, the property was titled in the parties' names. In 2008 the parties transferred the real estate to their children but retained a life estate in [Husband's] name. The value of this life estate was set at $171,448.20 by [Husband's] accountant before deductions for taxes and maintenance. There are no mortgages on this residence.

---

[1] Even if not waived, the issues lack merit. The trial court specifically noted that "despite significant losses for income tax purposes," Husband "has been able to maintain his business." Trial Court Opinion, 6/3/14, at 9. Thus, the trial court included all of Husband's business expenses in calculating his income and clearly considered Husband's business tax returns. Both parties utilized professional accountants to analyze the business accounts, and the trial court accorded greater weight to Wife's expert's report. **See Frey v. Frey**, 821 A.2d 623, 627 (Pa. Super. 2003) ("[I]n determining issues of credibility, the lower court's findings must be given the fullest consideration for it was the lower court who observed and heard the testimony and demeanor of various witnesses.") (quoting **Jayne v. Jayne**, 663 A.2d 169, 172 (Pa. Super. 1995) (quotation omitted)). As to the disparate earning capacities, the trial court utilized its discretion after assessing each party's credibility regarding his or her relative assets and income.

Trial Court Opinion, 6/3/14, at 5.

Husband references the testimony of Mr. Randy Tarpay of Sickler Accounting Associates. N.T., 1/25/13, at 94. Mr. Tarpay testified regarding his calculation of the value of the Oppenheimer Road property, as follows:

> I think it's readily apparent from the letter I wrote there, but it's Just a calculation of the fact that somebody else, I think a realtor or somebody had appraised the property at $220,000. But a life estate based on Lynn's age that yields a value to him of $171,448.20. That's from a table that represents a factor of 77.931% of the fair market value would be assigned to him because he's going to be allowed to live there for the rest of his life. My understanding is that if he does live there that he has to pay all of the expenses for maintaining the property and, you know, Lynn had provided copies of many of those expenses. They are co-mingled between business and personal there, but $700 is a very reasonable, conservative estimate of what his, you know, out-of-pocket obligation would be for that property for that time frame. And so, subtracting that obligation from the life estate, you come to a value of $23,296.77.

N.T., 1/25/13, at 112. Thus, without citing any case law supporting his claim, Husband contends that the trial court should have considered what it would cost for Husband to live in and maintain the Oppenheimer Road property for a number of years based upon his life expectancy, and should have subtracted that amount to arrive at the value of the property.

Our first observation is that in awarding Wife the marital residence at 434 South Bedford Street, the trial court held Husband harmless on payment of the outstanding mortgage. More to the instant point, however, in awarding that asset to Wife, the trial court did not deduct the cost of

maintaining the property from its value, as Husband seeks on the property awarded to him. Moreover, the trial court considered Husband's argument and rejected it. We find merit in the trial court's explanation, as follows:

> Applying the factors described in the Divorce Code and the requirements of the case law yields the following analysis:
>
> The discussion must begin with reference to the values used by the parties. The real estate values are from 2012. This seems appropriate as the cases point out that the value of assets should be determined close to the distribution date as possible. *Sutliffv. Sutliff*, 543 A.2d 534 (Pa. 1988). However, the values provided to the Court on all other property were valued as it existed in 2010 as of date of separation. Further, regarding the life estate, the value provided was reduced by the monthly expense of maintaining the property. The Divorce Code does direct the Court to take into account the expenses of sale and the Federal statues and local tax ramifications associated with an item to be divided. 23 Pa C.S.A. § 3502(10.1) and (10.2). However, reducing the value of the life estate by maintenance costs and property taxes would not seem appropriate unless extraordinary or very significant. That is not the case here, so we use a value of $171,448.20 which [Husband's] expert described as the value of the life estate without maintenance expense and property tax.

Trial Court Opinion, 6/3/14, at 8–9.

We reject Husband's claim that the trial court abused its discretion in failing to assign a $23,296.17 valuation to Husband's life estate by deducting ordinary living expenses, which were calculated on Husband's life expectancy, from Husband's expert's valuation of $171,448.20 of the Oppenheimer Road property. This Court will not find an abuse of discretion unless the law has been "overridden or misapplied or the judgment

-13-

exercised" was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." **Wang v. Feng**, 888 A.2d 882, 887 (Pa. Super. 2005). "It is within the province of the trial court to weigh the evidence and decide credibility[,] and this Court will not reverse those determinations so long as they are supported by the evidence." **Childress**, 12 A.3d at 455 (quoting **Sternlicht**, 822 A.2d at 742). The trial court did not err.[2]

Husband's final issue relates to the trial court's award of $6,000 for counsel fees to Wife. We first note the erroneous citations in Husband's brief that hamper our ability to evaluate support for his argument. Of the four cases Husband cites, two are obvious errors. His citation to **Miller v. Miller**, 501 A.2d 550 (Pa. Super. 1986), actually is a New Jersey case, **Matter of Promulgation of N.J.A.C. 13:35-6.14**, 501 A.2d 547, (N.J. Super. A.D. 1985), dealing with administrative regulation by the State Board of Medical Examiners. His citation to **Johnson v. Johnson**, 522 A.2d 1123 (Pa. Super. 1987), is a case titled, **Coleman v. Coleman**, that does not discuss counsel fees.

---

[2] We need not address Husband's fifth issue that the trial court abused its discretion "by awarding Wife reimbursement alimony based upon the incorrect valuation of Husband's life estate," Husband's Brief at 19, because we have concluded that the valuation was not an abuse of discretion. Thus, there is no basis to his fifth claim.

Pursuant to 23 Pa.C.S. § 3702, the trial court may award reasonable counsel fees and expenses for the dependent spouse. Husband suggests that the trial court erred in awarding Wife counsel fees "despite the fact that she earns a reasonable income of $24,000.00. . . ." Husband's Brief at 22. This income contrasts to Husband's tax-free income of $66,192.00. Trial Court Opinion, 6/3/14, at 2–3. In awarding the fees, the trial court stated as follows:

> Finally, [Wife] seeks an award of counsel fees in this case. Counsel fees can be awarded in proper cases on petition 23 Pa C.S.A. § 3702. Such an award should be made where it promotes justice between the parties by enabling a dependent spouse to defend the divorce action. ***Busse v. Busse***, 921 A.2d 1248. In this case, there is a substantial disparity in the parties income as previously noted. [Wife] has a reasonable income and the Court previously approved the payment of $3,000.00 by [Husband] toward the cost of a forensic accountant for [Wife]. The Court will award an additional $6,000.00 toward [Wife's] counsel fees. Such an award is necessary to equal t[he] parties' ability to pursue the divorce.

***Id***. at 11.

An award of counsel fees is within the discretion of the trial court, and we may reverse only upon a finding of abuse of that discretion. ***Marra v. Marra***, 831 A.2d 1183, 1188 (Pa. Super. 2003). "The purpose underlying the award of fees is to place the parties 'on par' in defending their respective rights." ***Id***. at 1188. The trial court's determination herein is supported by the record, and we find no abuse of discretion therein. ***Jacobs v. Jacobs***, 884 A.2d 301, 307 (Pa. Super. 2005).

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/4/2015