J-A16007-16
J-A16008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SUSAN KATZ, | ⋮ | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | ⋮ | |
| v. | ⋮ | |
| JAMES R. KATZ, | ⋮ | |
| Appellant | ⋮ | No. 1653 WDA 2015 |

Appeal from the Order October 9, 2015
In the Court of Common Pleas of Allegheny  County
Family Court at No(s): FD03-000652-008

| | | |
|---|---|---|
| SUSAN KATZ, | ⋮ | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | ⋮ | |
| v. | ⋮ | |
| JAMES R. KATZ, | ⋮ | |
| Appellee | ⋮ | No. 1723 WDA 2015 |

Appeal from the Order October 9, 2015
In the Court of Common Pleas of Allegheny  County
Family Court at No(s): FD03-000652-008

| | | |
|---|---|---|
| SUSAN KATZ, | ⋮ | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | ⋮ | |
| v. | ⋮ | |
| JAMES R. KATZ, | ⋮ | |
| Appellant | ⋮ | No. 123 WDA 2015 |

J-A16007-16
J-A16008-16

Appeal from the Order December 17, 2014
In the Court of Common Pleas of Allegheny  County
Family Court at No(s): FD03-000652-008

SUSAN KATZ,

        Appellant

            v.

JAMES R. KATZ,

        Appellee

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 390 WDA 2015

Appeal from the Decree December 17, 2014
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD03-000652-008

BEFORE:  SHOGAN, OLSON, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:        **FILED NOVEMBER 03, 2016**

James R. Katz ("Husband") and Susan Katz ("Wife") filed cross-appeals from a final divorce decree.  For the reasons that follow, we remand on the limited issues relating to the Coventry Estates shareholder loan,[1] the unexplained $48,500 attributed to Husband,[2] and the reduction of Wife's attorney's fees by $35,857.[3]  In all other respects, we affirm.

_____

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  Issue 2 in Wife's Appeal at 390 WDA 2015.

[2]  Issue 12 in Husband's Appeal at 123 WDA 2015.

[3]  Issue 1 in Wife's Appeal at 1723 WDA 2015.

- 2 -

In appeal numbers 123 and 390 WDA 2015, Husband and Wife filed cross-appeals from the final December 17, 2014 divorce decree. In those appeals, the parties raised matters relating to the trial court's 2012 rulings on exceptions and cross-exceptions to the Recommendations of the Special Master ("Master"). In appeal numbers 1653 and 1723 WDA 2015, the parties filed cross-appeals from the limited issue of enforcement of an order of counsel fees initially recommended in the Master's Report and Recommendation dated May 18, 2011 ("Initial Master's Report"), ordered by the trial court on September 18, 2015, and clarified on October 9, 2015. Therein, the court assessed liability for attorney fees and costs incurred in a separate civil action filed against Husband, ***Enclave Community Services Assoc. v. James R. Katz***, GD-11-006476, Allegheny County, 7/18/16 ("Enclave Lawsuit").

**Facts and Procedural History**

The Master, in her initial report, provided the background for this suit, as follows:

> The parties hereto were married on October 10, 1981[,] and separated[4] on May 6, 2003.[5] It was a first marriage for each. Both parties have college degrees. Husband's is from Boston University and Wife's is from Chatham College.[6] Wife was born [in May of 1956,] and is currently 57 [sic] years of

---

[4] At separation, both parties filed protection from abuse petitions against each other.

age. Husband was born in January 1953 and is currently 58 years of age. One daughter was born during the marriage. She is an adult. Both parties came into the marriage with considerable assets, namely stocks,[7] bonds, cash, and in Husband's case, a house. Each of the parties maintained their own investment accounts and bank accounts throughout the marriage. Each was able to invest his or her annual gifts from parents into their own investment accounts. The parties had one joint account into which Wife would deposit her paycheck and Husband would deposit funds from the Pittsburgh Land Company rentals and Enclave sale proceeds. Husband would pay the parties['] personal expenses from that account.

[5] This date was agreed upon by the parties' prior counsel. In actuality, Wife and Husband continued to reside in the marital residence estranged from one another until 2007 when Wife could stand it no longer and moved out.

[6] Wife testified that she had several Master's level courses, but never obtained an advanced degree.

[7] Husband's Father and Uncle founded Papercraft Corporation, which went public prior to the parties' marriage. Husband received stock, which will be addressed later in this report.

* * *

Both Husband and Wife are from well-to-do families. Each has one sibling. Throughout the marriage, each was regularly gifted with money from both their own and one another's parents. Money was loaned, parents acted as guarantors on loans, provided luxurious vacations,[8] dinners out, luxury automobiles complete with car insurance, repairs and gas cards, medical/hospitalization insurance,[9] school fees for the parties' daughter, as well as college fees, and other benefits too numerous to list. This largesse has enabled them to acquire a significant marital estate, which is now the subject of bitter dispute.

[8] Annual 2-week vacation to Hawaii with Wife's parents, and annual Thanksgiving vacations in New York with Husband's parents.

[9] Wife's medical insurance is currently being paid out of her Father's Orphan's Court Estate.

Initial Master's Report, 5/18/11, at 3.

Wife filed a complaint in divorce on November 19, 2003, and Husband filed claims in divorce on January 2, 2004. They divorced on December 17, 2014. The trial court described the case as "long running and extremely litigious," noting that the transcripts are "rife with examples of non-productive, even juvenile, behavior on the part of both of these educated and sophisticated people. This behavior complicated what was already a very complex case." Trial Court Opinion, 8/10/15, at 2, 3 (footnotes omitted). As noted by the Master, both parties come from wealthy families that have contributed financially to the parties. The multi-million-dollar marital estate is comprised of "real estate, including the marital home, four apartment buildings, and a large real estate development in Fox Chapel and Indiana Township, called *The Enclave*." ***Id***. There are also a number of developed and undeveloped lots. "The real estate was managed through the marital business entity known as *The Pittsburgh Land Company*. Another entity, *Coventry Estates*, was formed to build the homes in *The Enclave*." ***Id***.

The initial Master's equitable-distribution hearings took place November 13–15, 2010, and February 22–24, 2011. A substantial amount of time was spent taking testimony regarding the parties' jewelry. It was

appraised prior to the hearing, ("appraised jewelry"), and the parties stipulated to its value. The Master was to determine whether it was marital property and to whom it would be awarded. Additionally, both parties asserted that there was a great deal of missing jewelry ("Missing Jewelry") and both denied knowing where it was located.[5]

The Master pointedly commented on the credibility of the parties. The Master stated:

> Before addressing additional specific assets and making her Recommendation, the Master wishes to comment on the credibility or lack thereof she found in various witnesses, as well as their actions post-separation. **Husband was frequently not credible**. He didn't remember what was inconvenient for him . . . to remember, but had a clear memory of those things beneficial to his position. He avers that he has no knowledge of trusts to which he was at one time trustee and evinced no curiosity in and obtained no information regarding his Father's estate when he died. He frequently contradicted himself and had to back track when documentation was brought to his attention. He failed to provide information on current Trust assets and never voluntarily produced evidence regarding a post-separation business that he started using funds that would rightly have belonged to either The Enclave or Coventry Estates. In addition, Husband used the rental income and proceeds from sales as his own personal funding source. It was determined that he has submitted personal expenses which have been covered for him even after the Receiver was appointed. Husband employed reputable and experienced counsel, yet

---

[5] The Master credited Wife with $272,290 worth of the appraised jewelry and Husband with $33,038. She recommended that if any of the Missing Jewelry should be found, "it is to be appraised and the recipient shall either credit the other party with 50% of the value if money remains owing, or if not, pay the other party 50% of the value." Initial Master's Report, 5/18/11, at 10.

continued in persevering on his own view of his rights on issues that would have been explained to him by his counsel, both current and former.

**Wife was far more credible** as she willingly testified when she did not know something. Wife engaged the services of Mr. Braebender to collect, analyze, and explain the financial situation of both Husband and Wife as of the dates of marriage and separation. She hired reputable and credible appraisers. The Master did not get the impression that Wife was skewing her testimony, but was being straightforward. Wife received no financial benefit from any of the assets controlled by Husband during the marriage, other than the preservation of those assets which now benefit both of them. On the other hand, she is now liable on legal fees and other expenses as a result of Husband's behaviors. She received no alimony *pendent lite* or initial counsel fees.

Initial Master's Report, 5/18/11, at 5–6 (footnote omitted) (emphasis added).

In the Initial Master's Report regarding equitable distribution, the Master recommended that Husband be responsible for "100% of the litigation costs and expenses" related to the Enclave Lawsuit, and that Husband and Wife contribute seventy-five percent and twenty-five percent, respectively, (or sixty-five percent and thirty-five percent—there is a discrepancy in the Report), toward any damages that may be awarded in the Enclave Lawsuit. Initial Master's Report, 5/18/11, at 12–13. The Master also recommended that Husband and Wife be awarded six lots each of The Enclave properties and two each of the remaining rental properties. *Id*. at 14. Overall, the Master recommended a fifty/fifty equitable distribution.

Following the filing of the Initial Master's Report, both parties filed motions to open the record to present additional testimony. The trial court, on August 3, 2011, entered an order permitting some of the evidence to be re-examined by the Master to ascertain whether the record should be re-opened and granted an extension of time to file exceptions to the Initial Master's Report. On August 30, 2011, the Master filed a Supplemental Report ("Supplemental Master's Report"). Wife filed exceptions on September 16, 2011, and Husband filed cross-exceptions on September 27, 2011.

In October of 2011, Husband notified the trial court that he had "discovered" a safety deposit box, which Wife had not disclosed during the hearings. Husband allegedly had attempted to enter the box on December 23, 2010, after the first three days of the hearing before the Master, but before the second three days of the Master's hearing. Neither party told the Master or the trial court about the safety deposit box prior to October of 2011. The box ultimately was drilled open in the parties' presence, and it contained the Missing Jewelry, which was appraised at $74,367.05.

On January 18, 2012, Husband again filed a motion to open the record to present evidence of an inheritance Wife allegedly received upon her Father's death, both of which occurred after the Master's hearing. The trial court denied the motion. Order, 1/20/12.

- 8 -

Argument occurred on the parties' exceptions to the Initial and Supplemental Master's Reports on April 25, 2012. On June 26, 2012, the trial court "partially remanded the case to the Master for recalculation to address the distribution of two large lots in The Enclave which were omitted, apparently inadvertently," from the Initial Master's Report. Trial Court Opinion, 8/10/15, at 5. No additional testimony was to be taken and no hearing date was ordered.

At the request of the parties, the trial court held a conciliation on October 30, 2012, to resolve some of the issues raised in exceptions, as well as other issues between the parties, including the distribution of the Missing Jewelry. Thereafter, the trial court entered an order dated November 5, 2012, which, *inter alia*:

> again remanded this matter to the Master to determine three issues:
>
> 1. the distribution of the "missing" jewelry,
>
> 2. the appropriate interest to be added to the outstanding equalization payment owed by Husband to Wife in equitable distribution, and
>
> 3. both parties' requests for counsel fees.

Trial Court Opinion, 8/10/15, at 6 (footnote omitted). The November 5, 2012 order also addressed the apportionment of costs incurred or to be incurred in developing Old Indian Trail, a road through The Enclave, by dividing them equally between the parties. *Id*.

- 9 -

The remanded Master's hearing on the above three issues was held on July 31, 2013. The Master issued a Report and Recommendation on August 5, 2013, and amended it on August 30, 2013 ("Amended Master's Report"). The Master found that neither party was credible regarding the Missing Jewelry, determined that two items of the Missing Jewelry belonged to the parties' daughter, and she subtracted that amount. The Master granted Husband a fifty percent credit of $36,078.53 from the equalization payment he owed to Wife. Trial Court Opinion, 8/10/15, at 6. The Master also addressed issues two and three above on remand.

Both parties filed exceptions, which the trial court addressed in an order filed on February 20, 2014. Both parties appealed; the parties and the trial court complied with Pa.R.A.P. 1925.

## Appeals at 123 and 390 WDA 2015

### Issues

In the appeal at 390 WDA 2015, Wife raises the following two issues:

1. Did the Trial Court err as a matter of law, and abuse its discretion, in awarding Husband [an] equitable distribution credit for the value of Wife's non-marital personal property—including, but not limited to jewelry—upon Husband's return of same to her?

2. Did the Trial Court err as a matter of law, and abuse its discretion, in failing to recognize, as part of the marital estate, post-separation loans/advancements to Husband from Coventry Estates, a marital business entity controlled by Husband?

Wife's Brief at 13.

In the appeal at 123 WDA 2015, Husband raises the following twelve

issues:

1. The trial court erred in failing to credit Husband for his work on the marital entities for the years 2010 and 2011 until the receiver removed Husband from his position working for the entities, despite having attributed to Husband credit for his work from the parties' separation through 2009.

2. The trial court erred in its wording of the November 5, 2012 Order of Court because it is ambiguous as to whether it requires Husband to pay for one-half of the engineering fee or one-half of the engineering fee and one-half of the development of Old Indian Trail.

3. The trial court erred in its November 5, 2012 Order of Court by requiring Husband to bear the burden of one-half of the engineering study and the completion of Old Indian Trail in Enclave Phase III because all Phase III properties were awarded to Wife and Wife was responsible for the payment of expenses for her property pursuant to the orders of court dated November 7, 2011 and July 12, 2012.

4. Assuming, *arguendo*, Husband had any responsibility to bear the burden of one half of the engineering study and the completion of Old Indian Trail in Enclave Phase III the trial court erred and denied Husband due process by not scheduling a hearing on the matter insofar as there was a factual dispute regarding to whom Old Indian Trail provided a benefit.

5. The trial court erred in ruling that Husband was responsible for 100 percent of the litigation costs incurred in the Enclave Community Services Association v. James R. Katz action, and in attributing only 25 percent of the damages to Wife, despite the Enclave suing Husband for homeowners' dues owed on properties equally divided between Husband and Wife.

6. The trial court erred in failing to equally split the parties' respective Global Market settlement proceeds on the basis that they each were awarded an amount to compensate them for

their actual loss because the loss was incurred during the marriage and therefore is a marital asset subject to equitable distribution.

7. The trial court erred in failing to equitably divide the Distinct Coatings debt, a marital debt, to the parties.

8. The trial court erred in denying Husband's motion to supplement record after Wife's father died, thus creating a certainty that Wife would receive approximately two million dollars, despite the parties' separate estate being speculative at the time of trial and an important factor in the parties' equitable distribution award.

9. The trial court erred in failing to appropriately find which jewelry was marital and which jewelry was non-marital, given Husband's photographs and receipts for jewelry [W]ife claimed was non-marital and Husband's detailed documentation related to the jewelry.

10. After over seventy thousand dollars of "missing jewelry" was discovered, the trial court erred in affirming the [M]aster's decision to admit evidence related to inherited or non–marital property given that the trial court's prior ruling on June 25, 2012 (affirming the [M]aster's original decision) is a final order of court and cannot be modified.

11. The trial court erred regarding [W]ife's "missing jewelry" by failing to grant Husband counsel fees despite the [M]aster finding [W]ife incredible in stating she forgot about the safe deposit box when she had entered the safe deposit box more than sixty times and [H]usband's key was locked inside, precluding him from accessing the "missing jewelry."

12. The trial court erred by attributing to Husband $48,500 which was unsupported by the evidence, not addressed by the trial court, and neither counsel could identify its source.

Husband's Brief at 14–15.

## Standard of Review

In reviewing awards of equitable distribution, we are guided by the following:

> A trial court has broad discretion when fashioning an award of equitable distribution. **Dalrymple v. Kilishek**, 920 A.2d 1275, 1280 (Pa. Super. 2007). Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is "whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." **Smith v. Smith**, 904 A.2d 15, 19 (Pa. Super. 2006) (citation omitted). We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. **Id**. This Court will not find an "abuse of discretion" unless the law has been "overridden or misapplied or the judgment exercised" was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." **Wang v. Feng**, 888 A.2d 882, 887 (Pa. Super. 2005). In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. **Id**. "[W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." **Schenk v. Schenk**, 880 A.2d 633, 639 (Pa. Super. 2005) (citation omitted).

**Biese v. Biese**, 979 A.2d 892, 895 (Pa. Super. 2009). "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." **Yuhas v. Yuhas**, 79 A.3d 700, 704 (Pa. Super. 2013) (*en banc*). Moreover, it is within the province of the trial court to weigh the evidence and decide credibility, and this Court will not reverse those determinations as long as they are supported by the evidence. **Sternlicht v. Sternlicht**, 822 A.2d 732, 742 (Pa. Super. 2003). We are also aware that "a master's report and recommendation, although only

advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." ***Childress v. Bogosian***, 12 A.3d 448, 455-456 (Pa. Super. 2011).

## Wife's Appeal at 390 WDA 2015

Wife first argues that the trial court erred in upholding the Master's recommendation giving Husband a credit for the return of any of Wife's non-marital personal property (jewelry).  Wife's Brief at 20.  Wife asserts that the Master correctly awarded each party his respective marital and non-marital jewelry and correctly excluded the value of the non-marital pieces of both parties in the total amounts attributed to each of them.  ***Id***. at 21.  Wife suggests the error occurred when Husband was given a credit for fifty percent of the appraised value of the Missing Jewelry against any outstanding debt Husband owed to Wife.  ***Id***.  Wife maintains that the Divorce Code does not permit the grant of credit which essentially converts Wife's non-marital property into marital property and posits that:

> [b]y allowing Husband to be credited with 50% of the value of the non-marital items returned to Wife, the Trial Court is, essentially, assigning each returned non-marital asset a marital value to be divided.  The result of the Master's Recommendation is an obvious misapplication of the law, as the Divorce Code does not support or allow a party to be granted a credit for the value of non-marital property, against the value of marital property.

- 14 -

Wife's Brief at 23. In support, Wife cites **Biese**, 979 A.2d at 897 (holding that under the Divorce Code, the value of the marital residence at the time of Master's hearing, not the higher value at the time of separation, should have been used to determine increase in value); and **Childress**, 12 A.3d at 459) (holding that because the market value of the husband's retirement accounts declined between the date of separation and the date of a hearing, a portion of the husband's post-separation contributions was reduced and cannot be credited to the husband).

The trial court found Wife to be incredible on the issue of the Missing Jewelry. Trial Court Opinion, 8/10/15, at 20. "Credibility determinations are within the sole province of the trial court, which this Court may not disturb on appeal." **Busse v. Busse**, 921 A.2d 1248, 1256 (Pa. Super. 2007). The trial court agreed with the Master and found the Master's August 30, 2013 Report in which she returned the value of the Missing Jewelry "to be the most equitable [result] under the circumstances." Trial Court Opinion, 8/10/15, at 21. Husband essentially asserts the trial court's position. Husband's Brief at 75–76.

> Regarding this issue, the trial court stated:
>
> [T]he jewelry was found by Husband in the midst of the six days of trial but he did not bring it to anyone's attention until after trial. His motives for not doing so remain unknown. What Wife expected to gain by concealing the jewelry is also unknown, though it can be inferred by her actions that she intended to simply keep this jewelry out of equitable distribution. **What is known without question, however, is that Wife entered**

**the safe deposit box many times and that it held close to $75,000.00 worth of jewelry which she claims to have simply forgotten.**

**I do not find Wife credible on this issue**. I do not find it credible that she would have forgotten the existence of the safety deposit box which held the "missing" jewelry. But she, upon its discovery, remembers in great detail which pieces were marital and which were not. Although the Master's first report of August 5, 2013 backed out the value of the pieces she found to be non-marital, the Master then, I believe rightfully, in her August 30, 2013 Amended Report, returned the value of those pieces in order to comport with her original ruling. She then credited Husband for 50% of all the "missing" jewelry, except pieces clearly belonging to the parties' daughter, which was in keeping with her original recommendation[.]

I agree with the Master that Wife should not be rewarded for her lack of good faith. As both parties behaved shamefully regarding this item, I find the Master's scheme of distribution to be the most equitable under the circumstances and it should not be disturbed. Additionally, as the original Recommendation contemplated this result and neither side objected to it, I did not disturb it.

Trial Court Opinion, 8/10/15, at 20–21 (emphases added).

Wife fails to refute, or indeed acknowledge, the credibility determination at the core of this issue. Wife's Brief at 20–24. As credibility determinations are within the sole province of the trial court, we conclude this issue lacks merit. **Busse**, 921 A.2d at 1256.

Wife's second issue asserts that the trial court erred and abused its discretion "in failing to recognize, as part of the marital estate, post-separation loans/advancements to Husband from Coventry Estates." Wife's Brief at 25. Wife maintains the trial court erred in sustaining Husband's

cross-exception (g) and failing to attribute to Husband receipt of a post-separation shareholder loan from the parties' marital interest in Coventry Estates. Wife states that originally, the Master attributed this loan to Husband. The Master had explained:

> During the marriage, Husband started a general contractor construction company that he called Coventry Estates. The purpose of the company was to act as the general contractor for houses built at The Enclave. Husband would engage the contractors and sub-contractors needed to build the new owner's house. Eventually, there were so many disputes with the buyers and contractors that Husband ceased operating Coventry Estates. Prior to doing so, though, he took out $330,734 in a "shareholder loan." **Then** he ceased operations. **The Master finds that 50% of that shareholder loan should have been paid to Wife.**

Initial Master's Report, 5/18/11, at 9 (initial emphasis in original; second emphasis added). Thus, in her recommended equitable distribution order, the Master attributed to Wife "Interest in Coventry Estates-(50%/2009/$330,734 shareholder loan) . . . ." Initial Master's Report, 5/18/11, at 14. Wife, obviously, agreed that the Master correctly charged Husband with receiving $330,734 from the marital business, Coventry Estates, and therefore, properly attributed it to him as part of the marital estate.

Husband disagreed and asserted his disagreement in his cross-exception (g), which stated as follows:

> g) The Master failed in attributing to Husband monies from Coventry [Estates, an entity formed to build homes for The Enclave,] as a shareholder loan when, in fact, same were merely

an accounting recap to close Coventry's business and Husband received no distribution nor was any attributed to him by Mr. Brabender[, who was Wife's expert regarding the value of the real estate business,] who conducted a comprehensive analysis of these distributions and whose determination [the Master] accepted. Neither party sought, nor included in any pretrial statement or any document, the suggestion that Husband receive this amount, or any amount, for Coventry in 2009.

Husband's Cross-Exceptions to Master's Recommendation, 9/27/11, at unnumbered 2. In explaining the basis of his cross-exception (g), Husband avers that "the Master apparently mistook a $330,734 closing entry on a tax return—a paper transaction—as evidence of additional cash flow." Husband's Brief at 77.

The trial court sustained Husband's cross-exception (g) without any comment on June 26, 2012. Order, 6/26/12, at 4. Wife maintains that "[a]s a result, Husband received $330,734 of marital funds without accounting for it in the 50/50 distribution of assets found by the Master and the [t]rial [c]ourt to be due to Wife." Wife's Brief at 27 (citing Initial Master's Report, 5/18/11, at 14). Thus, Wife contends that the trial court erred in sustaining cross-exception (g). Wife's Brief at 27.

Moreover, despite the fact that the trial court sustained Husband's cross-exception (g) in the June 26, 2012 order, Wife suggests that it now appears that the trial court is "reversing its June 2[6], 2012 ruling in which it originally sustained Husband's cross-exception (g)." Wife's Brief at 29. In

support of this contention, Wife references the trial court's Rule 1925 opinion

dated August 10, 2015. Therein, the trial court stated:

> In her original recommendation, the Master attributed each party with $165,367—representing [one-]half of the Coventry Estates shareholder loan that Husband took. (5/18/11 Master's report, p 14–15)[.][10] As the Coventry entity was marital, and Husband took the shareholder loan to his own use, dividing that loan in half is appropriate and was not error, as 50% of those loans was charged to Husband.
>
> [10] This is also where [the] Master distributes the $48,500.00 in personal expenses paid on behalf of Husband which cannot be accounted for and which I suggested for remand.

Trial Court Opinion, 8/10/15, at 21.

Husband maintains that the trial court and Wife are mistaken. He

suggests, "While it is the case that the trial court [now] opines that 'dividing

the [$330,734] loan in half is appropriate and was not error,' that

presupposes the existence of such a loan, for which there was absolutely no

evidence, and which **neither party** had claimed was an asset until the

Master's fortuitous error fell into Wife's lap." Husband's Brief at 79

(emphasis in original).

We agree with Wife that there is a discrepancy in the record; it does

appear that the trial court initially sustained Husband's cross-exception (g),

whereas now, in its opinion pursuant to Pa.R.A.P. 1925, the trial court noted

that "dividing that loan in half is appropriate and was not error, as 50% of

those loans was charged to Husband." Trial Court Opinion, 8/10/15, at 21.

Further, the trial court ties this issue to another of Husband's claims, discussed *infra*, that the trial court urges we remand. We agree, and will remand this issue to the trial court as well.

**Husband's Appeal at 123 WDA 2015**

Husband first argues[6] that the trial court erred in failing to credit Husband for his work on the marital entities for the years 2010 and 2011 until the court-appointed Receiver[7] removed Husband from his position working for the Entities. During the equitable distribution trial, Wife

_____

[6] Husband's first issue in his brief was labeled Issue (J) in his Pa.R.A.P. 1925(b) statement.

[7] Wife apparently sought the appointment of a Receiver on January 4, 2010. Wife alleged, *inter alia*, that Husband's tax returns—which allegedly had not been filed for many years until Husband was compelled to do so by court order—revealed that he had made shareholder loans to himself in excess of $570,000. On January 27, 2010, the trial court appointed Kirk B. Burkley, Esquire, and the Bernstein Law Firm, P.C. ("Receiver") as the Receiver of Pittsburgh Land Company and Coventry Estates, Inc. (the "Entities"). Husband attempted to remove the Receiver in 2010; the trial court denied the motions on June 16, 2010, and December 13, 2010. The trial court terminated the receivership on November 7, 2011, following the completion of the parties' equitable distribution trial. On December 14, 2011, Husband filed claims against the Receiver. The Receiver moved for summary judgment on November 5, 2012, and the trial court granted same on May 15, 2013. Husband appealed to this Court. We affirmed the grant of summary judgment and rejected Husband's challenges to the trial court's appointment of the Receiver and procedures related thereto on September 3, 2014. *Katz v. Katz*, 107 A.3d 218, 1014 WDA 2013 (Pa. Super. filed September 3, 2014). Our Supreme Court denied Husband's petition for allowance of appeal. *Katz v. Katz*, 109 A.3d 680 (Pa., filed February 4, 2015).

presented a report by her expert, Richard Brabender, regarding the Entities that included an appraisal of their marital and non-marital components. Husband's Brief at 37. Husband acknowledges that he accepted the propriety of the report. *Id*.

The Master had adopted Mr. Brabender's analysis of the funds Husband withdrew from the Entities versus the expenses Husband paid. Husband's argument on this issue includes seven pages of "the work he did" regarding the Entities. Husband's Brief at 39–45. Husband suggests that the trial court misunderstood his argument, *id*. at 46 and 47, and maintains that he should be credited with the "imputed salary amount" through the date the properties "were actually, finally, divided." *Id*. at 47.

Wife counters that once Husband no longer had exclusive control over the Entities due to the Receiver's appointment, there is no support for the claim that Husband should continue to receive a salary. Wife's Reply Brief at 31. Wife asserts that Husband failed to provide any financial information regarding his operation of the Entities in 2010 and 2011 other than the Receiver's testimony that Husband performed some day-to-day duties. *Id*. at 32. Wife maintains that the Receiver concluded Husband's involvement had a negative impact "on the preservation of the [Entities'] assets." *Id*. at 33. Finally, Wife posits that Husband waived any argument regarding additional payment of funds because the trial court terminated the receivership by order dated November 7, 2011. The November 7, 2011

order required that any claims of, or against, the Receiver were to be filed with the trial court within thirty days. Order, 11/7/11. Wife contends that in his claims against the Receiver filed on December 14, 2011, Husband failed to raise any issue related to Husband's salary. Wife's Reply Brief at 33. Thus, Wife argues waiver. *Id.*

Husband's argument on this issue appears to be that he should be credited for work performed in 2010 and 2011, which is two years beyond the scope of Mr. Brabender's expert report. We do not agree and rely on the trial court's disposition of this issue. The trial court stated:

> The Receiver was in place in 2010 and 2011, the years for which Husband is seeking "credit" for work performed. It was clear from the information provided during the Receivership, that Husband more than adequately compensated himself prior to the Receiver taking over running the business. Throughout the time that the Receiver was in place, Husband complained that the Receiver was destroying the business. It was clear to me, to the Master, and ultimately to the Superior Court at 1014 WDA 2013, that the appointment of the Receiver was a necessary protection for the marital estate.
>
> Had the business entities been allowed to remain in Husband's control, unchecked by the Receiver's oversight, I believe the value of the businesses would have declined, resulting in a depleted estate to divide.
>
> As such, I declined to further reward Husband with an additional salary for attempting to carry out what I found to be a systematic and purposeful depletion of the estate.

Trial Court Opinion, 8/10/15, at 16–17. Thus, we conclude this issue lacks merit.

We address Husband's issues two through four together as they relate to an order dated November 5, 2012, and docketed on November 7, 2012 (hereinafter "November 7, 2012 order").  In issue two, Husband asserts that paragraph four of the order is ambiguous.  Paragraph four provides as follows:

> 4.  All costs related to the cost of the required engineering study required by Fox Chapel Borough regarding development east of Fox Chapel Road and necessary completion of Old Indian Trail and facilities for Enclave development fronting Lots 307, 308, 312, and 313, are to be borne equally by the parties as the development of the Enclave as a whole benefits each.

Order, 11/7/12, at ¶ 4.  Husband asserts the clause is ambiguous because:

> it may either designate that the parties are to share equally in the required engineering study, which study concerns development east of Fox Chapel Road and which concerns necessary completion of Old Indian Trail and Facilities for Enclave development, **or** it may designate that the parties are to equally bear the cost of the engineering study, and development of Old Indian Trail.

Husband's Brief at 48–49 (emphasis in original).  He suggests that the trial court's explanation that "the parties are to split the costs for both the engineering study and the completion of the road" is a post-facto justification that does not "square with the evidence of record."  Husband's Brief at 49; Trial Court Opinion, 8/10/15, at 9.

Husband fails to clearly identify the evidence he suggests is inconsistent.  "When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find

certain issues to be waived. Pa.R.A.P. 2101. It is not this Court's responsibility to comb through the record seeking the factual underpinnings of [a party's] claim." *Irwin Union Nat. Bank & Trust Co. v. Famous*, 4 A.3d 1099, 1103 (Pa. Super. 2010) (citation omitted). Additionally, Husband makes his bald, unsupported claims without any reference to the record. The failure to support bald assertions with sufficient citation to legal authority impedes meaningful review of his claims. *Commonwealth v. Rompilla*, 983 A.2d 1207, 1210 (Pa. 2009); *Stimmler v. Chestnut Hill Hosp.*, 981 A.2d 145, 153 n.9 (Pa. 2009) (stating that argument portion of brief must contain "sufficient citation to the record . . . ."). Thus, issue two is waived.

Even if not waived, the claim lacks merit. We have reviewed the orders in question and find no ambiguity. Read in context, the November 7, 2012 order provides that both parties equally bear the costs for the engineering study and the development costs for Old Indian Trail. Any other interpretation strains logic.

In issue three, Husband suggests that the trial court's November 7, 2011 order, which terminated the receivership, the November 7, 2012 order, and the July 12, 2012 order,[8] which directed that "each party is to pay all

_____

[8] While the trial court dated the order June 7, 2012, it was not filed and docketed until July 12, 2012. Thus, in keeping with our practice to identify
*(Footnote Continued Next Page)*

bills related to the propert[ies] that were awarded by the Master" are inconsistent. Husband's Brief at 52; Order, 7/12/12; Order, 11/7/11. Wife disagrees and suggests that Husband improperly is citing to earlier court orders that do not apply. Wife's Reply Brief at 40.

Initially, we note that Husband's argument on this issue is confusing and convoluted. Husband quotes extensively and even attributes the trial court as the source on one occasion but never identifies the documents he is quoting. Husband's Brief at 50, 51. Moreover, we observe that the November 7, 2012 order on which Husband relies states that "[a]ny terms of this Order which are in conflict with previous Orders shall supersede the previous Orders." Order, 11/7/12, at ¶ 5. Accordingly, per the *proviso* of the November 7, 2012 order quoted above, the trial court ensured that any conflict in prior orders was rectified. Husband's third issue fails.

In issue four, Husband maintains that the trial court erred by not holding a hearing regarding an August, 2012 engineering study and the completion of Old Indian Trail in phase III of The Enclave. Husband's Brief at 52. Wife responds that she brought these matters before the trial court in her Petition for Clarification of the Parties' Responsibilities Regarding Enclave Costs. Wife's Reply Brief at 21. She maintains that Husband filed no

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

items in the certified record by their filing dates, we refer to the date of this order as July 12, 2012.

responsive pleading and did not request a hearing on the issue. *Id*. Our review of the record supports this claim.

Husband fails to assert the place in the record where he requested a hearing on the matter. "It is not this Court's responsibility to comb through the record seeking the factual underpinnings of [an appellant's] claim." *Irwin Union Nat. Bank & Trust Co.*, 4 A.3d at 1103. Husband's failure to request a hearing dispels his complaint that the trial court failed to hold one. "On appeal, we will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated." *Tindall v. Friedman*, 970 A.2d 1159, 1174 (Pa. Super. 2009). "In this jurisdiction one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter." *State Farm Mutual v. Dill*, 108 A.3d 882, 885 (Pa. Super. 2015) (*en banc*) (citations omitted), appeal denied, 116 A.3d 605 (Pa. 2015). We thus find issue four waived.

Finally, regarding all three issues relating to the November 7, 2012 order, we additionally rely on the trial court's explanation in rejecting Husband's claims. The court stated:

> Both parties are responsible for the costs related to the individual lots they were awarded. The completion of the Old Indian Trail benefits the entirety of The Enclave and is therefore

- 26 -

a benefit to both, so the cost for the road is appropriately borne by both. I see no factual dispute.

Likewise, there is no conflict with the Orders of November 7, 2011 and [July 12,] 2012. In those two [o]rders, the parties are ordered to bear the costs related to the lots they were awarded in equitable distribution. What Husband attempts to do is parse out which parts of the road benefit which lots most and come up with another scheme to assign the cost. The objective of the Divorce Code is to effectuate economic justice between the parties, not mathematical perfection to the square foot measurement.

Accordingly, as the equal division of these costs is the most equitable method of distributing these costs, my November [7], 2012 [o]rder should stand.

Trial Court Opinion, 8/10/15, at 10.

Husband's fifth issue relates to the Enclave Lawsuit, the separate civil action filed against Husband by the Enclave Homeowners' Association ("Association") on April 26, 2011, for monetary damages for assessments allegedly not paid to the Association, breach of contract, and other related claims. Wife explains that on June 2, 2011, Husband filed a praecipe to join Wife as an additional defendant in the lawsuit. After two failed attempts to effectuate service, Wife was joined on May 3, 2013. Wife's Reply Brief at 21; N.T., 2/12/15, at 57–58, 71–73, 76. Husband asserts that because Wife now owns some of the land, she should equally bear the cost of defense of the suit and be responsible for the resultant damages. Husband's Brief at 54–55.

Wife responds that the suit against Husband by the Association occurred prior to 2010, which is before the time Wife was awarded any ownership interest in the properties at issue. Wife's Reply Brief at 42. Moreover, she points out that the Enclave Lawsuit plaintiffs made no claims against Wife in the lawsuit. *Id*. at 43. She maintains that her "later receipt of property implicated in the lawsuit does not make her equally responsible for the prior actions of Husband . . . ." *Id*. at 44.

The Master recommended that because "Wife had no decision-making authority or input into the relationship between Husband and the [Association]," Husband should be "responsible for 100% of the litigation costs and expenses." Initial Master's Report, 5/18/11, at 12–13. Regarding the possibility that the Association might prevail in its claims, the Master recommended that "Wife contribute 25% of the damages and Husband 75% of the damages assessed, as he was in charge of the Enclave management and activity throughout." *Id*. at 13.

In response to Husband's exception on this issue, the trial court stated:

> If The Enclave lawsuit had been filed *solely* for homeowner's dues alleged to be owed, Husband's argument might have merit. To the contrary, however, the lawsuit against Husband also asserts breach of contract and misrepresentation claims which are directed to Husband as a developer, not merely as a homeowner. Wife was excluded from any dealings regarding the development of The Enclave, which was solely managed by Husband. The lawsuit filed by the Association arises from dealings with Husband, not Wife.

> I found that the Master divided the responsibility for damages in an equitable fashion, reflecting the fact that Wife has been awarded some of these properties and will benefit from them. As for costs of the litigation, I also found attributing all of the costs to Husband is a fair result, considering Wife had no part in any dealings with the Association.

Trial Court Opinion, 8/10/15, at 15–16 (emphasis in original). We find no error or abuse of discretion by the trial court on this issue.

Husband next argues that the trial court erred "in failing to equally split the parties' respective Global Market settlement proceeds on the basis that they each were awarded an amount to compensate them for their actual loss because the loss was incurred during the marriage and therefore is a marital asset subject to equitable distribution." Husband's Brief at 58. Apparently, the parties instituted legal action related to securities fraud, and Wife received $100,700 and Husband received $70,060 post separation. Once again, Husband fails to cite to the record and improperly includes references to findings without citation. Such a practice impedes this Court's ability to review the record. The claim is waived. ***Irwin Union Nat. Bank & Trust Co.***, 4 A.3d at 1103.

Even if not waived, the issue is meritless. The trial court explained that the Master distributed the parties' various accounts and did not "count" the settlements which the parties received from their lawsuit to compensate them for losses from their investments in Global Markets because "the amounts received were in proportion to their individual losses." Trial Court

Opinion, 8/10/15, at 13. Husband acknowledges that while this may be true, it was error because the amounts were received with regard to investments the parties made during the marriage and thus, were marital property. Husband's Brief at 58. He maintains the trial court should have "equalized those investments, or equalized those awarded and divided them equally between the parties, in accordance with the intended overall [fifty-fifty] equitable distribution scheme." *Id*. at 59.

Wife responds that the trial court did not err. She maintains that Husband's argument ignores the fact that, even assuming that the settlement proceeds were found to be marital assets, the trial court has the discretion to "consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets." Wife's Reply Brief at 46 (citing 23 Pa.C.S. § 3502(a)). Wife suggests that Husband's argument appears to be that the trial court is constrained to divide all assets and debts of the parties equally, rather than equitably, which is incorrect. Wife's Reply Brief at 46.

Wife also maintains that Husband ignores the fact that the source of the funds used by both parties to make their respective investments—which ultimately gave rise to the cause of action—were non-marital funds. Wife's Reply Brief at 46. While Wife "credibly testified that she received a check from her father which she immediately invested in the subject investment portfolios, and that Husband made his investments with money from his

separate personal accounts and the parties' daughter's accounts," Husband did not present any evidence to the contrary. *Id*. Wife asserts that the trial court deemed her testimony credible. *Id*.

The trial court held:

Husband received $71,060.00 and Wife received $100,700.00 in damages from the Global Markets lawsuit. Husband complains that it was error not to split the proceeds equally. Husband fails to note that both parties invested in Global Markets using their own non-marital funds. Wife's investment was made with funds she was given by her Father specifically for that investment purpose. Husband likewise used his non-marital funds and, according to Wife's testimony, also used funds belonging to the parties' daughter. The testimony on this issue was credible. I found it entirely appropriate, therefore, that the settlement amounts received be treated as non-marital since they arose from investments made with non-marital funds.

Trial Court Opinion, 8/10/15, at 14. We will not reweigh the trial court's credibility determination. Thus, this issue lacks merit. *Busse*, 921 A.2d at 1256.

Husband's seventh issue avers that the trial court erred in failing to equitably divide the "Distinct Coatings" debt. The Master did not address this debt in her initial recommendation, and the trial court dismissed Husband's exception regarding the omission. The Distinct Coatings lawsuit was filed against Pittsburgh Land Company by a painting subcontractor seeking $25,000. Husband asserts that the debt actually related to Coventry Estates, and he contends that Wife should bear some of the

responsibility for any damages for which he is found liable because it is a marital debt of the parties. Husband's Brief at 59–60.

Wife responds that Husband failed to present any additional evidence of this debt, including the exact amount of the debt, the date on which the debt was incurred, the reason for the dispute with the subcontractor, or any evidence as to why it should be considered a marital debt. Wife's Reply Brief at 47. Wife further asserts that even if the debt existed, the trial court correctly noted that Wife, having no involvement in the Entities' operations, should not be responsible for any potential damages. *Id*. Wife maintains that she put no money or labor into Coventry Estates post-separation, and in fact, was "shut out of these entities by Husband." *Id*.

The trial court concluded that because Wife was effectively "out of the picture" regarding any of the operations of Pittsburgh Land Company and Coventry Estates, it did not find it appropriate that Wife "be saddled with any potential damages found due to a sub-contractor to which Coventry was obligated." Trial Court Opinion, 8/10/15, at 19. "Wife was not a party to the contract, and had no opportunity to exercise any responsibility over the carrying out of the contract. As such, it was equitable that she not be responsible for any resulting damages." *Id*. This conclusion by the trial court does not represent error or an abuse of discretion.

Husband argues in issue eight that the trial court erred in denying Husband's motion to supplement the record after Wife's father died.

Husband avers that as of the equitable distribution hearing, Wife's father, who was incapacitated, was "worth" $3,500,000 to $4,000,000, was intestate, and Wife and her brother were the only heirs. Husband's Brief at 60. "By January 18, 2012, Wife's father had died," and although exceptions had been filed, the trial court had not ruled on them. *Id*. at 60–61. On that date, Husband presented a motion to supplement the record, averring that Wife had inherited two million dollars, and based on *Hutnik v. Hutnik*, 535 A.2d 151 (Pa. Super. 1987), and *Solomon v. Solomon*, 611 A.2d 686 (Pa. 1992), "an expectancy that is 'contingent' is not properly considerable by a court in equitable distribution, but where the right is 'vested,' that is something that the court may consider." Husband's Brief at 61.

Wife responds that Husband has waived this issue by failing to file a cross-exception to the Master's determination "that the separate estate which either party may inherit from his or her family would be retained by each as his or her sole and separate property, and thus would not affect the ultimate distribution of assets." Wife's Reply Brief at 48 (citing Pa.R.C.P. 1920.55-2(b) (matters not covered by exceptions are deemed waived)).

In her recommendation, the Master stated, "Both of these parties have expectancies from their families. Neither provided the Master with details. Each shall retain all right, title and interest in any and all expectancies, inheritances and gifts made to him or her from their respective families." Initial Master's Report, 5/18/11, at 19. We agree with Wife that Husband

has waived this issue by failing to file a cross-exception to the Master's determination on the issue. Pa.R.C.P. 1920.55-2(b).

In the alternative, Wife responds that the Master did not err in weighing the evidence as she did. Wife's Brief at 48. Wife underscores that the Master properly considered the parties' separate estates and potential inheritances, in that the Divorce Code provides that the parties' opportunities for future acquisition of capital assets and income is a relevant factor for the court. *Id*. at 49 (citing 23 Pa.C.S. §3502(a)(5) (the parties' opportunities for future acquisition of capital assets and income is a relevant factor to the equitable division of marital property.)). Wife points out that in considering the parties' potential inheritances, "the Master found that neither instance should alter the distribution scheme she recommended." Wife's Reply Brief at 49. Wife avers that *Solomon* is not applicable to the instant case because there was no analysis regarding whether or how a party's receipt of the corpus of a trust would factor into an equitable distribution scheme. She also maintains that *Hutnik* actually supports the trial court's ruling because in that case, as here, the master considered the expectancies of both parties and noted that because neither party provided details to the court, no further consideration would be given to them in the distribution scheme. Wife's Reply Brief at 49-50.

In addressing this issue, the trial court explained that both parties come from significant wealth. The trial court acknowledged Wife's

inheritance at her Father's death. Trial Court Opinion, 8/10/15, at 17. The trial court indicated that the Master had reported that Husband, as well, came from a wealthy family and was, at one time, a trustee of family trusts from his wealthy family. In explaining this fact, the Master stated:

> [Husband] avers that he has no knowledge of trusts to which he was at one time trustee, evinced no curiosity in and obtained no information regarding his Father's estate when he died. He frequently contradicted himself and had to backtrack when documentation was brought to his attention. He failed to provide information on current trust assets ... Husband was frequently not credible. He didn't remember what was inconvenient for him not to remember, but had a clear memory of those things beneficial to his position.

Initial Master's Report, 5/18/11, at 5.

The trial court further explained as follows:

> By failing to produce documents and otherwise demonstrate what his separate estate is or what his expectancy is, Husband made it impossible for the Master and this [c]ourt to know if he was being truthful about it. I am left to speculate with regard to Husband's separate estate. What is known is that his father was one of the two founders of Papercraft Corporation, and that his family was very generous to Husband during the marriage. I am aware that Husband has only one sibling. I find it unlikely that Husband has no separate estate or no expectancy in a significant estate.
>
> The separate estates of the parties [are] but one factor of many to be considered in equitable distribution of the marital-estate. The Master divided the marital estate equally. I adopted that distribution and would have done so with or without the information regarding Wife's inheritance or Husband's. Both parties have very significant assets of their own and both received substantial marital assets, some income producing.
>
> Of note, Wife's Father contributed over $800,000.00 to the development of The Enclave and paid over $700,000.00 to

contractors who worked at The Enclave (11/17/2010 TR. p. 86).[9]
Accordingly, Husband has benefited substantially from the
wealth of Wife's family, as well as his own.  The contribution of
Wife's father increased the value of the marital estate. As noted
by the Master, The Enclave may not have been completed
without that family contribution.   Both parties leave this
marriage as wealthy individuals.  Excluding the separate estates
of the parties and distributing the estate 50/50 was completely
appropriate and there was no need to supplement the record.

> [9]  Husband initially claimed this $800,000.00 was a
> gift and that there was no obligation to repay it.
> Subsequently a promissory note was found in the file
> of his former counsel (who had received it apparently
> from Husband) at which point Husband
> "remembered" the loan.  Civil litigation was initiated
> by Wife's Father's estate to recover this loan.
> Should the lawsuit be successful, liability is to be
> borne by both parties equally for repayment.  Even
> with repayment, the benefit derived increased the
> marital estate value by allowing for the development
> and preservation of The Enclave.

Trial Court Opinion, 8/10/15, at 18–19.  The trial court's explanation on this

issue is compelling.  The trial court did not err in refusing to supplement the

record.

Husband next asserts that the trial court erred in failing to determine

which jewelry was marital property and which jewelry was non-marital

property.  Like most of Husband's issues, it is difficult to ascertain Husband's

precise complaint.  It appears Husband is assailing the Master's credibility

findings concerning the parties' testimony regarding the jewelry because

those credibility findings allegedly contradict Husband's documentary

evidence.  Husband's Brief at 64.  The claim also assails the Master's award

of two pieces of jewelry to the parties' daughter, Danielle. *Id*. The two pieces were assessed at $2,210, and Husband maintains that because Wife never proved she actually delivered the jewelry to Danielle, it should have been attributed to Wife. *Id*. at 66.

Wife underscores the Master's conclusion that "Husband was frequently not credible. He didn't remember what was inconvenient for him not to remember, but had a clear memory of those things beneficial to his position. He frequently contradicted himself and had to back track when documentation was brought to his attention." Wife's Reply Brief at 53 (quoting Initial Master's Report, 5/18/11, at 5). Wife maintains that some of the receipts Husband produced were as old as 1982, hence the value would be inaccurate, and he failed to produce evidence that the pieces existed or were in Wife's possession at the time of separation. *Id*. at 53. As to the remand hearing regarding the Missing Jewelry, Wife explains that Husband agreed on the record that two of the missing pieces belonged to Danielle. *Id*. at 54 (citing N.T., 7/31/13, at 59). Thus, the Master entered a recommendation consistent with both parties' testimony. Wife's Reply Brief at 54.

We examined the record and reject Husband's contention. The findings Husband complains about are based upon credibility determinations that were within the purview of the court. Husband acknowledges as much. Husband's Brief at 64. Moreover, we reject outright Husband's claim that

because Wife never proved she actually delivered the jewelry to Danielle, it should have been attributed to Wife. Indeed, Husband fails to support the allegation. As it was within the province of the trial court to weigh the evidence and decide credibility, and Husband's argument does not convince us that those determinations are unsupported by the evidence, we will not reverse them. **Sternlicht**, 822 A.2d at 742.

In his tenth issue, Husband avers that after over seventy thousand dollars of Missing Jewelry was discovered, the trial court erred in affirming the Master's decision to admit evidence related to inherited or non–marital property "given that the trial court's prior ruling on June 25, 2012 (affirming the [M]aster's original decision) is a final order of court and cannot be modified." Husband's Brief at 66. This issue relates to the Master's recommendation that if any of the Missing Jewelry would be found, it was to be appraised, and the recipient "shall either credit the other party with 50% of the appraised value if money remains owing, or if not, pay the other party 50% of the appraised value." Initial Master's Report, 5/18/11, at 10. Husband asserts that because Wife did not file an exception regarding the Master's recommendation, she could not thereafter complain that certain items of the Missing Jewelry were non-marital property. Husband's Brief at 67.

Wife responds that the Master did not initially determine that all of the Missing Jewelry indeed was marital; therefore, it was appropriate for the

Master to permit Wife's testimony at the subsequent remand hearing on July 31, 2013, regarding whether the Missing Jewelry was marital or non-marital property. Wife's Reply Brief at 55. She also suggests that even if there was error, in light of the value of Danielle's jewelry ($2,210) out of the total ($568,000), it is *de minimus*. **Id**. at 56 (citing Trial Court Opinion, 8/10/15, at 13).

The trial court pointed out that the Master deducted only $2,210, the value of jewelry that both parties conceded belonged to their daughter. The trial court thus concluded that because both parties agreed the pieces did not belong to either of them, the deduction was appropriate. Trial Court Opinion, 8/10/15, at 13. The court further opined that even if the deduction were error, "it is so *deminimus* as to be harmless." **Id**. We agree. We find no impropriety in this deduction as we consider the distribution scheme, as we must, as a whole. **Wang**, 888 A.2d at 887.

Husband's eleventh issue asserts that the trial court erred regarding Wife's Missing Jewelry by failing to grant Husband counsel fees in light of the Master's conclusion that Wife was not credible when she stated that she forgot about the safe deposit box. Husband's Brief at 68. Husband points out that Wife "entered the safe deposit box more than sixty times and [H]usband's key was locked inside, precluding him from accessing the 'missing jewelry.'" **Id**. Husband states that the trial court previously awarded Husband $1500 based upon Wife's conduct regarding the Missing

Jewelry, which Wife still had not paid. *Id*. at 69. Husband urges that "[i]n the event [the trial court] defers her decision until argument on the parties' exceptions, Husband requests an additional $1,500." *Id*. Without pertinent comment, Husband cites *Rhoades v. Pryce*, 874 A.2d 148, 154 (Pa. Super. 2005).

Wife maintains that both parties' claims for counsel fees were denied by the Master in her Amended Master's Report of August 30, 2013. Wife's Brief at 57. While she disputes the denial of her own request for counsel fees, Wife indicates she has not asserted this claim on appeal due to the Master's discretion to award or deny counsel fees. *Id*. Wife contends that Husband's claim on this issue ignores the Master's credibility determinations regarding Husband's behavior. *Id*. at 58.

The Master noted that the parties disputed who was responsible for the failure to produce the jewelry in discovery for appraisal when the parties' other jewelry was provided. Amended Master's Report, 8/30/13, at 1. Wife last entered the box in 2005, when she removed the jewelry "she wanted," and allegedly forgot about the jewelry remaining. *Id*. at 2. The Master determined that Wife was not credible regarding her claim that she forgot about the safety deposit box's existence by pointing out that it contained "heirloom pieces she had received from her Mother and gifted items that belonged to the parties' daughter." *Id*. The Master further explained that Husband "discovered" the box in December of 2010, but he failed to bring it

to "Wife's attention, his attorney's attention, the [c]ourt's attention, or the Master's attention at the time of the initial hearings" in November of 2010 and February of 2011. *Id*. The Master concluded as follows:

> The Master finds that **each of these parties was operating in less than good faith** with the hope or expectation that she or he might be able to score a windfall of some sort. The Master recommends that the jewelry and contents in the box be distributed to Wife and that she pay/credit Husband with the value of the jewelry and coins contained therein, with certain exceptions. First, the two undisputed items that each believes was gifted to their daughter . . . . The value of those two items is $2,210. [A]fter further consideration, it is recommended that Husband be granted a credit of $36,078.53 against any money that remains owing by him to Wife.

*Id*. at 3 (emphasis added). Regarding the counsel fees, the Master recommended as follows:

> Wife is requesting counsel fees in the amount of $16,843.25 based on her perception of Husband's obdurate, vexatious and willful behavior. Husband is requesting counsel fees and costs of $8,659.87 for the same reasons. . . .
>
> The parties hereto are both suspicious of and angry at one another. Because of the long history attendant to the divorce, neither can cooperate on even the most basic level. Both parties went to [c]ourt over and over, presenting [m]otion after [m]otion, to get even the most basic of things accomplished. The Master recommends that each of the parties be responsible for his or her own counsel fees, costs and expenses.

Amended Master's Report, 8/30/13, at 4 (footnote omitted).

In addressing this issue, the trial court stated as follows:

> I disagree with Husband's complaint . . . that he should have been awarded attorney fees. The costs involved in the resolution of this aspect of the case were caused by the actions

of both parties. I find that Wife concealed the existence of the box and Husband concealed his discovery of it, both of which unnecessarily prolonged the litigation.[7] I, accordingly, agreed with the Master that each party should be responsible for their own counsel fees.

> [7] A series of motions were filed by both parties regarding opening the box, having the jewelry appraised, transporting it, etc.

Trial Court Opinion, 8/10/15, at 13 (internal citations omitted). An award of counsel fees is within the discretion of the trial court, and we may reverse only upon a finding of abuse of that discretion. *Marra v. Marra*, 831 A.2d 1183, 1188 (Pa. Super. 2003). We are unconvinced that the trial court abused its discretion on this issue; thus, we find that it lacks merit.

Husband's final issue in his appeal at this docket number asserts the trial court erred by attributing to Husband $48,500, which was unsupported by the evidence, not addressed by the trial court, and neither counsel could identify its source. Husband's Brief at 70. Because the trial court has requested a remand on this issue, Husband has abandoned this issue in his brief.

"The Master found Husband to have paid himself $48,500 from Coventry Estates . . . for personal expenses." Trial Court Opinion, 8/10/15, at 14. Wife asserts that the Master correctly attributed the $48,500 to Husband in the Initial Master's Report. Wife's Reply Brief at 59. The trial court stated as follows:

- 42 -

Husband raised this issue in his exceptions to the Master's Report. I dismissed the exception. In her brief in response to Husband's exceptions, . . . Wife argued that this amount must be considered together with the $75,000.00 which the Receiver testified he spent on Husband's personal expenses. Wife noted that "perhaps" the $48,500.00 represents a discounted portion of the $75,000.00.

While Wife may very well be correct, it is not clear from the record that this was the Master's reasoning. Court orders should not be based on a guess. It is not clear from a review of the record where the sum of $48,500.00 came from. While this is a relatively small sum in light of the size of the estate, it is not insignificant and Husband should not be forced to speculate as to why this amount was attributed to him. This matter should have been remanded by me to the Master for clarification. Accordingly, this discrete issue should be remanded for clarification.

Trial Court Opinion, 8/10/15, at 14–15. Because the trial court is unable to explain the source of the $48,500 attributed to Husband, we are constrained to remand this issue for clarification per the trial court's request.

**Appeals at 1653 and 1723 WDA 2015**

**Facts and Procedural History**

As noted, these cross-appeals relate to enforcement of that portion of the Initial Master's Report filed May 18, 2011, assessing liability for attorney's fees and costs incurred in the separate civil action filed against Husband, the Enclave Lawsuit, as ordered on September 18, 2015, and clarified on October 9, 2015. We have explained that The Enclave is a substantial real estate development and was a major marital asset distributed between the parties, with each party receiving certain lots within

The Enclave. "The Homeowner's Association filed suit against Husband only, alleging, *inter alia*, that Husband did not meet his obligations as developer of *The Enclave*, did not pay the appropriate Enclave assessments, breached his contract, and engaged in misrepresentation." Trial Court Opinion, 1/29/16, at 3. The Enclave's lots were distributed on November 7, 2011. The distribution order set forth that each party was responsible for the costs and expenses related to the individual lots he or she received in equitable distribution. Order, 11/7/11, at 1.

The Master determined the marital nature of potential liability and costs incurred in the Enclave Lawsuit. The Master found Husband one hundred percent responsible for costs of litigation in the Enclave Lawsuit and further recommended that Wife be responsible for twenty-five percent of any damages ultimately assessed in the suit. Trial Court Opinion, 1/29/16, at 3; Initial Master's Report, 5/18/11, at 19.

The trial court explained the ensuing history as follows: "The Master based her Recommendation in this regard on her determination that, though the suit arose from events which occurred during marriage, Wife had 'no decision making authority or input into the relationship between Husband and the homeowner's association.'" Trial Court Opinion, 1/29/16, at 3–4 (quoting Initial Master's Report, 5/18/11, at 12–13). The trial court continued:

In June of 2011, Husband filed a Praecipe for a Writ to Join Wife as Additional Defendant in the Enclave [L]awsuit; but did not serve her with a summons until November of 2012. Wife hired the [law] firm . . . in July of 2012 to represent her in the lawsuit and Husband's 2252 Complaint was ultimately filed in May of 2013 (TR. p. 42, 57-58). Prior to the 2252 Complaint being filed, Wife settled with the Homeowner's Association in November of 2012, paying the assessments due on the lots she had been awarded in equitable distribution. The Association agreed to not block future sales or seek further damages from Wife.

At the time of the Master's Recommendation, the Homeowners Association and Husband were the only parties in the subject lawsuit. Husband then joined Wife and, subsequently, the Borough of Fox Chapel intervened. Wife cross-claimed against Fox Chapel. Husband's claims against Wife in the lawsuit remain pending. (TR. p. 78-79).

Wife incurred substantial fees in the litigation. In her August 26, 2014 Petition for Enforcement, Wife requested $133,000.00 in fees be awarded and a "mechanism" be established by which she would collect all future fees on a monthly basis, without hearing or review. Husband filed a Reply and Counterclaim, asserting reimbursements were due to him from Wife. [The trial court] referred the parties to the Master, preserving, both parties' claims for attorney fees. The Master's hearing was held February 12, 2015. Wife's attorney in the Enclave [L]awsuit, . . . Husband, and the parties' respective domestic attorneys testified.

Essentially, Wife's position at the Master's hearing was that, since Husband had joined her to the Enclave [L]awsuit, he should be responsible for any and all fees she incurred to . . . her attorneys in the lawsuit. Husband's position was that he could not be responsible for any of Wife's fees since the lawsuit had expanded to include additional parties (including Wife who he himself had joined), becoming a "different" lawsuit than that initially contemplated by the Master.

On March 4, 2015, the Master recommended that Husband pay Wife all of the $159,960.00 in fees introduced through her counsel. The Master also awarded Wife $6,500.00 in fees for

Husband's non-compliance with her discovery ["Enclave Master's
Report"]. Both parties filed exceptions.

Trial Court Opinion, 1/29/16, at 4–5 (footnote omitted).

The trial court heard oral argument on exceptions. By order dated
September 18, 2015, and filed on September 22, 2015, the trial court
reduced the attorney's fees Husband owed Wife by $35,857 and limited
Wife's obligation for potential liability in the Enclave Lawsuit to December of
2010. Wife requested reconsideration, and the trial court "corrected
mistakes in the percentage and extent of Wife's liability and made clear that
Wife was not precluded from requesting future fees incurred in the
litigation." Trial Court Opinion, 1/29/16, at 5. Both parties appealed; the
parties and the trial court complied with Pa.R.A.P. 1925.

**Issues**

In the appeal at 1723 WDA 2015, Wife raises the following single
issue:

1. Did the Trial Court err as a matter of law, and abuse its
discretion, in failing to properly enforce its June 25, 2012 Order
of Court—which adopted the May 18, 2011 Master's Report and
Recommendation wherein Husband was found to be 100%
responsible for the "litigation costs and expenses" in the civil
matter filed against Husband at GD 11-006476 [The Enclave
Lawsuit]—in its finding, which was manifestly unreasonable and
against the weight of the evidence, that certain counsel fees
($35,857) incurred by Wife were unrelated to the civil matter [in
The Enclave Lawsuit]?

Wife's Brief at 6.

- 46 -

In the appeal at 1653 WDA 2015, Husband raises the following nine issues:

1.    The trial court erred in affirming the Master's award to Wife of her counsel fees on the Homeowners' Association lawsuit, as Wife failed to raise a claim for counsel fees during or after the equitable distribution trial; however, Husband, on the other hand, did raise a claim for reimbursement of his counsel fees for which Master Ferber determined he was solely responsible.

2.    The trial court erred in only reducing the amount of counsel fees awarded to Wife by Husband by $35,857.00, where the fees do not relate to the homeowner's action filed against Husband at the time of the Master's Report and Recommendation dated May 18, 2011, as the Master's Report could not have contemplated the action pursuant to which [Wife] incurred substantial counsel fees, because it did not exist as of the date of the Report and Recommendation.

3.    The trial court erred in affirming the Master's award of counsel fees because the original Master's Report decision was based on Husband incurring counsel fees in the matter over which Wife had no control, but Wife is now a party, has her own counsel, and has even filed her own claims in the action giving her complete control over her own counsel fees.

4.    The trial court erred in affirming the Master's award to Wife of counsel fees after Wife settled the homeowner's suit.

5.    The trial court erred in affirming the Master's award of counsel fees to [Wife's counsel] because Husband had a good faith dispute over whether he was responsible for Wife's counsel fees.

6.    The trial court erred in affirming the Master's award to Wife of $6,500.00 for a discovery dispute on which Husband prevailed, and because the additional $6,500.00 award: (1) was not specifically requested, and (2) is a double dip to the extent it was awarded to [Wife's counsel] in its claim for counsel fees on the Homeowner's Association matter.

7.     The trial court erred in reversing the Master's recommendation that Wife's share of any damages awarded in the Enclave civil suit "be calculated only for that percentage of damages accrued prior to December 31, 2012" instead of prior to December 31, 2010.

8.     The trial erred on Reconsideration of the September 18, 2015 Order by permitting Wife to seek or request payment of, or reimbursement for, counsel fees and costs incurred by her after January 31, 2015 in connection with the civil suit at GD 11-006476—effectively writing Wife a "blank" check to incur counsel fees ad infinitum and ad absurdum.

9.     The trial erred on Reconsideration of the September 18, 2015 Order by reversing the Master's recommendation that Wife be allocated responsibility for 35%, rather than 25% of the damages assessed in the civil action.

Husband's Brief at 8–10.

## Wife's Appeal at 1723 WDA 2015[9]

Wife's single complaint is that the trial court failed to properly enforce its June 25, 2012 order, which adopted the May 18, 2011 Initial Master's Report.  Wife's Brief at 15.  The Master had found that Husband was 100 percent responsible for the litigation costs and expenses in the Enclave Lawsuit.  The trial court upheld that finding in its June 25, 2012 order denying Husband's exception to the Master's recommendation.  When Wife

_____

[9]  Wife erroneously references, without explanation, citations to the certified record as "3/4/16 T.T." followed by a page number, suggesting to this Court a hearing was held on 3/4/16.  Such inattention to detail is inexcusable.  The hearing in the matter occurred February 12, 2015, and "3/4/16" was the date of the relevant Master's report.

sought enforcement of that order, the Master awarded Wife all of the counsel

fees, costs, and expenses she incurred in the Enclave Lawsuit, through

January 31, 2015, which totaled $159,960.62. The trial court reversed the

Master's finding, in part, and reduced Wife's award by $35,857 to

$124,103.62. Order, 9/22/15, at unnumbered 1.[10] In pertinent part, the

order provides as follows:

> I find that it was reasonable for Husband to be held liable for
> Wife's attorney fees in [the Enclave Lawsuit] to which Husband
> joined her. . . . It is unclear from [Wife's counsel's] bills that all
> of the work performed by her firm was with regard to Wife's
> liability in [the Enclave Lawsuit]. In fact, many of the bill entries
> are clearly related to other matters. Husband should not be held
> liable for all of the bills submitted. The fact that [Wife's
> attorney's] firm listed all of the work under the same billing code
> does not, in and of itself, mean that all of that work
> was . . . related to the [Enclave L]awsuit. Billing for the firm's
> lien against Wife to protect its outstanding invoices, and billing
> related to lot sales are not appropriately assessed to Husband.
> Wife took her Lots in equitable distribution as they were at the
> time of distribution, including any and all liens and
> encumbrances.

*Id*.

Wife maintained that as a direct result of the litigation pending against

Husband, she was unable to sell the real estate lots that had been awarded

to her in equitable distribution. Wife's Brief at 13. On appeal, Wife contends

that because the Enclave Lawsuit was the "sole cause of the costs" she

---

[10] While the order was dated September 18, 2015, it was not filed until
September 22, 2015.

- 49 -

incurred, the trial court's disallowance of any portion of the fees "results in a forfeiture of the value of Wife's property awarded to her in equitable distribution." *Id*. Wife asserts the trial court failed to specify the fees it disallowed in both its September 22, 2015 order and January 29, 2016 opinion,[11] and alleges it is impossible to recreate how the court arrived at the amount of fees it disallowed. Wife's Brief at 19.

Wife also avers that the trial court's action in reducing credited counsel fees amounts to "an inappropriate reversal of the credibility finding by the Master, who actually heard testimony of [Darlene Nowak, Wife's attorney,] the only witness on the substantive issues related to the counsel fee award." Wife's Brief at 22. Wife maintains there is no evidence in the record to support such a finding, nor any evidence in the record to contradict Ms. Nowak's testimony. *Id*. at 24. Wife avers that the Master—the only trier of fact to actually observe the witness—found Ms. Nowak to be credible. *Id*. at 22–23. Thus, Wife maintains that the trial court erred and abused its discretion in not awarding Wife all of the fees submitted to the Master, which totaled $159,960.62 as of January 31, 2015.

Except in two instances, Husband relies on his brief in support of his cross-appeal at 1653 WDA 2015 for his responsive argument to Wife's claim.

_____

[11] We assume Wife's reference to "the January 16, 2016 opinion" is a typographical error, as the relevant trial court opinion was dated and docketed on January 29, 2016.

Husband's Brief at 44. Thus, to the extent we refer to Husband's response on this issue, we necessarily address some of the issues Husband raised in his cross-appeal. Husband's two responses asserted here are: 1) Wife failed to meet her burden of proof regarding her entitlement to the fees, and 2) Wife's claim that the Enclave Lawsuit impacted the sale of her properties lacks merit. Husband's Brief at 45–46.

As reproduced above, the trial court stated that it was unclear from Wife's counsel's bills that all of the work performed by her firm related to Wife's liability in the Enclave Lawsuit. The trial court further indicated that many of the bill entries were "clearly related to other matters." Order, 9/22/15, at unnumbered 1. That order, however, failed to identify which bills the court disallowed. Thus, we turn to the trial court's Pa.R.A.P. 1925(a) opinion.

The trial court reiterated that while Husband was determined to be responsible for 100 percent of the fees generated in the Enclave Lawsuit because he brought Wife into the suit unnecessarily, that fact did not compel Husband to be liable "for any and all fees that Wife incurs relative to her lots in [T]he Enclave." Trial Court Opinion, 1/29/16, at 11. The trial court opined that when Wife received her Enclave lots, she received them "with all of their encumbrances, and she was aware of that fact and the complications it could cause her when she wanted to sell her lots." *Id*. at 11–12. The trial court explained:

Here, Wife attempts to burden Husband with costs that any real estate owner faces.  She submitted her attorney, Darlene Nowak's bills into evidence.  I did not credit Nowack's [sic] testimony that all entries on her invoices were related to The Enclave [L]awsuit.  The bills included entries for drafting Agreements of Sale, attending closings, work on a completely separate lawsuit, and even the drafting a Complaint in Confession of Judgment against Wife by the . . . [law]firm to protect its fees.  I do not find any basis on which to attribute these bills to Husband."

*Id*. at 12 (internal citations omitted).

We previously determined in Husband's issue five in his cross-appeal at 390 WDA 2015 that the trial court did not abuse its discretion or err in determining that because Wife was excluded from any dealings regarding the development of The Enclave, which was solely managed by Husband, the Master was correct in attributing all of the costs of litigation related to the Enclave Lawsuit to Husband.  We further concluded therein that the trial court divided the responsibility for damages in an equitable fashion.  Similarly, we conclude, as did the trial court, that it was therefore reasonable for Husband to be held liable for Wife's attorney fees in the Enclave Lawsuit.  Thus, any of Husband's issues in his appeal related to the propriety of this conclusion are rejected.

In the present claim asserted by Wife, however, we are unable to determine whether the trial court properly reduced the amount of fees owed by Husband by $35,857.  The trial court's explanation, noted *supra*, while seemingly reasonable, fails to notate the items eliminated and lacks specific

- 52 -

reference to testimony supporting the court's conclusions. While we have reviewed the testimony referenced by the trial court, we note that the parties did not refer to the Exhibits included in the record, and the trial court has failed to identify the particular bills that it eliminated. For this reason, we are compelled to remand this matter to the trial court.

**Husband's Appeal in 1653 WDA 2015**

Husband's first five issues relate to the propriety of the award of counsel fees to Wife relating to the Enclave Lawsuit. We have determined that fees properly were awarded with the exception of the trial court's disallowance of fees that we cannot ascertain in the record. Moreover, we previously concluded the trial court properly found that Wife's involvement in the Enclave Lawsuit was solely due to Husband's action in joining her as an additional defendant in that matter. For this reason, Husband's issues one through five are rejected as meritless.

Husband's sixth issue avers that the trial court erred in affirming the Master's separate award to Wife of $6,500 for a discovery dispute, in which Husband prevailed, because the additional $6,500 award: (1) was not specifically requested, and (2) is a "double dip" to the extent it was awarded to Wife's counsel in her claim for counsel fees in the Enclave Lawsuit. Husband's Brief at 34.

The Master recommended $6,500 in counsel fees due to Husband's non-compliance with discovery. The Master explained that Husband "was not forthcoming with answers to discovery and that his assertions in his Reply and Counterclaim increased Wife's legal fees." Master's Enclave Report, 3/4/15, at 4.

Wife responds that when she presented her Petition for Enforcement of fees, Husband averred that a hearing and discovery were necessary, given the claims. Wife did not ask the Court for a hearing or discovery. Wife contends that she propounded discovery, but received no documentation whatsoever from Husband. Wife's Reply Brief at 27. Thereafter, Husband attempted to withdraw his claims, stating that he discovered he does not have a claim "at this time." *Id*. at 27. Thus, Wife asserts that Husband withdrew his claims only after Wife was forced to seek legal counsel. She argues this was vexatious behavior by Husband. *Id*. at 28.

It appears the trial court imposed fees pursuant to 42 Pa.C.S. § 2503, which provides, in pertinent part, as follows:

**§ 2503.  Right of participants to receive counsel fees**

The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

* * *

(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

We have stated:

> Section 2503(7) is a statutory provision enabling a participant to receive reasonable counsel fees when another participant engages in dilatory, obdurate or vexatious conduct during the pendency of a matter. *In re Estate of Liscio*, 432 Pa.Super. 440, 638 A.2d 1019 (1994). . . . Moreover, "it is well-settled that this Court will not reverse the trial court on its decision to award counsel fees absent an abuse of discretion." *O'Connell v. O'Connell*, 409 Pa.Super. 25, 597 A.2d 643, 647 (1991) (citation omitted).

*Bonds v. Bonds*, 689 A.2d 275, 279–280 (Pa. Super. 1997). *See Kulp v. Hrivnak*, 765 A.2d 796, 800 (Pa. Super. 2000) (trial court award of attorneys' fees affirmed where lower court found the appellants' conduct dilatory, obdurate, and vexatious). *Cf. Busse*, 921 A.2d at 1258 (no abuse of discretion for award of counsel fees where the husband prolonged the already extensive litigation, he was not forthcoming with information the wife requested, and the wife incurred counsel fees as a result of the husband's conduct).

In rejecting Husband's claim, we rely on the trial court's resolution of the issue, as follows:

> I affirmed the Master's award of fees because I found Husband's behavior vexatious. Husband, in his Reply and Counterclaim to Wife's Petition for Enforcement, asserted he was owed reimbursement from Wife for payments made pursuant to three marital obligations distributed in the Master's May 18, 2011 Report and Recommendation. First, Wife was to pay 50% of any potential award in a separate 2003 lawsuit filed against the parties . . . regarding money lent to the parties by Wife's Father ("the Fryer lawsuit"). Second, there was an outstanding marital bill from Reed Smith; Third was Wife's 25% liability for any potential award in the The Enclave [L]awsuit.

After receiving Husband's Counterclaim, Wife propounded discovery on Husband regarding his allegations that she owed him reimbursement for payments made. Husband did not comply with the discovery and Wife prepared a Motion to Compel. Husband withdrew his claims, with my permission, stating that "upon investigation, Husband has discovered he does not have a claim at this time." Husband was correct: he did not have a claim. He had paid nothing on any of these matters which would have entitled him to reimbursement.

By raising claims, which he knew or should have known were invalid, Husband caused Wife to unnecessarily incur fees defending against those claims. He withdrew the claims, but only after the legal work had been done and bills incurred by Wife.

**I do not find Husband's claim that this was an innocent mistake credible.** I do not believe Husband could have had a reasonable belief he was entitled to reimbursement when he had made no payments on any of these matters. I found this behavior vexatious as it "had no basis in law or fact and served the sole purpose of causing annoyance." See, Thunberg v. Straus, 682 A.2d 295 (Pa. 1996).

Trial Court Opinion, 1/29/16, at 9–10 (emphasis added). We defer to the

trial court's credibility determination, **Busse**, 921 A.2d at 1256, and concur

with the court's conclusion that Husband's behavior was vexatious. **Id**.;

**Kulp**, 765 A.2d at 800.

Husband's seventh issue is that the trial court erred in reversing the

Master's recommendation that Wife's share of any damages awarded in the

Enclave Lawsuit "be calculated only for that percentage of damages accrued

prior to December 31, 2012" rather than prior to December 31, 2010.

Husband's Brief at 38. Husband asserts that the Master's choice of

December 31, 2012, as the date before which Wife was responsible for

damages awarded in the Enclave Lawsuit was correct. Wife responds that the Master made a typographical error in the date, and it should have been December 31, 2010, as determined by the trial court. Wife's Reply Brief at 29–30.

We reject this issue based upon the trial court's reasoning:

> I found the Master either misunderstood the time period covered by the lawsuit or, alternatively, there was a typographical error. The Enclave [L]awsuit ends with 2010. As Wife was held responsible for a percentage of any potential damages awarded, it follows that her liability would end at 2010. Additionally, the lots were distributed in 2011. It would be illogical for Wife's liability for Husband's lots to continue after the properties were distributed.

Trial Court Opinion, 1/29/16, at 10.

Next, Husband submits that the trial erred on reconsideration of the September 22, 2015 order by permitting Wife to request reimbursement for counsel fees and costs incurred by her after January 31, 2015, in connection with the Enclave Lawsuit, "effectively writing Wife a "blank" check to incur counsel fees *ad infinitum* and *ad absurdum*." Husband's Brief at 40. Husband suggests Wife prematurely filed a petition for enforcement, thereby prejudicing Husband. *Id*. at 40.

This issue relates to the Master's failure to address whether Wife could seek additional fees incurred after January 31, 2015. At the time of the February 12, 2015 hearing, the Enclave Lawsuit remained pending. N.T., 2/12/15, at 67–68. At that hearing, Wife presented her claim for fees

incurred through January 31, 2015. *Id*. at Wife's Exhibits 20–21.

Attorney Nowak testified that although the trial had taken place in August,

2014, no decision had been made because the trial court desired testimony

from a court-appointed expert. *Id*. at 67. The March 4, 2015 Enclave

Master's Report did not address whether Wife could seek additional fees

incurred after January 31, 2015. Given that the litigation continued, the trial

court did not abuse its discretion in reconsidering its prior dismissal of Wife's

cross-exception, thereby permitting Wife to seek relief to recoup additional

fees, if necessary. The trial court stated as follows:

> Again, Husband brought Wife into the lawsuit. Until that lawsuit is concluded, Wife could very well incur valid legal fees, which should be Husband's responsibility. My decision . . . merely gives [Wife] a methodology to come into court should she need to enforce her rights. . . . Wife's rights extend only to fees which arise in The Enclave litigation.

Trial Court Opinion, 1/29/16, at 11. Husband does not convince us that the

trial court's conclusion on this issue was an abuse of discretion.

Finally, Husband asserts that the trial court erred on reconsideration of

the September 22, 2015 order in reversing the Master's recommendation

that Wife be allocated responsibility for thirty-five percent, rather than

twenty-five percent, of the damages assessed in the Enclave Lawsuit.

Husband's Brief at 42. Husband explained that in "the May 18, 2011

Master's Report, the Master recommended on pages 11–12 that Wife be

responsible for 25% of the damages; however, in the recommendation

section, on page 19, the Master stated that Wife shall be responsible for 35% of the damages." Husband's Brief at 42–43. Wife filed an exception to this discrepancy, and the trial court corrected the mistake, concluding: "[I]t was clear that [the Master] determined Wife should be responsible for 25%, as she assigned Husband with 75%. She then mistakenly typed 35%, a mistake carried over to her March 4, 2015 Recommendation. I simply corrected that error." Trial Court Opinion, 1/29/16, at 10.

We have reviewed the record and concur with the trial court. Further, we note multiple documents filed by Husband in which he himself asserted that the Master had assessed Wife's responsibility for damages at twenty-five percent. *See*, *e.g.*, Husband's Cross-Exceptions to the Initial Master's Report, 9/27/11, at ¶ z. The trial court did not err in correcting this obvious mistake.

For all of these reasons, we conclude that the trial court did not err or abuse its discretion in equitably distributing the marital estate, and we remand on the discreet issues relating to the Coventry Estates shareholder loan, the unexplained $48,500 attributed to Husband, and the reduction of Wife's attorney's fees by $35,857 as explained herein.

Decree affirmed in part; case remanded for proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judge Olson joins the Memorandum.

Judge Strassburger files a Concurring and Dissenting Memorandum.

J-A16007-16
J-A16008-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/3/2016